BREAUX, C. J.
Plaintiff brought this suit to have himself recognized owner of lands described in his petition, and for rent thereon.
The question involved is mainly of description or 'identification of lands.
Plaintiff sets up title to lot 15, section 14; lots 2 and 8, section 15; lots 1, 2, 3, 5, 6, 7, 8, 11, 15 and 16, section 23; and lots 3 and 7 section 25 — in possession of defendant.
We will here state that plaintiff was recognized by the judgment appealed from as owner of a small part of the property as compared to the whole area of the land claimed.
We will not again refer to the land specially referred to in the judgment appealed from as owned by plaintiff, for the reason that defendant has not moved to amend the judgment on appeal. Besides, he avers that the judgment rendered is correct. That much of the controversy must be considered forever settled. It follows that lands heretofore decreed to belong to plaintiff remain as to title as decreed.
Plaintiff is satisfied with the description in his deed of the land he claimed, except as relates to lots 3 and 7, section 25, which he contends should be changed; that is, in his petition he sets forth a description of all the land he claims, but he alleges that the number of the section in which lots 3 and 7 are situated is not correctly given.
These lots 3 and 7 were erroneously described in the deed under which plaintiff claims as lots 3 and 7, section 26, and it seems that that error goes back to the first deed under which plaintiff claims to hold.
Plaintiff made his vendor, Cawthorn, one of the parties defendant, in order to have the error in question corrected.
We may as well state here that, in order to support his demand to have the correction made, plaintiff averred, in substance, that Cawthorn had mortgaged his property to Henry Dickinson, and that in thus mortgaging the property he had correctly described lots 3 and 7 as being in section 25, and that there was, therefore no error in the deed of mortgage executed by Cawthorn sometime before he sold to plaintiff, and that in consequence his (plaintiff’s) own deed should be accordingly corrected.
The land mortgaged is a part of the property which had been conveyed to plaintiff; but it happens that in the deed of sale section 26 is written instead of 25. Plaintiff’s contention is that under the facts the description in the mortgage act has the effect of correcting the misdescription in the contract of sale. .
*919 Plaintiff’s wife, and afterward tlie plaintiff himself, became bound to the payment of this mortgage; for the wife as vendee, and afterward plaintiff as her vendee, assumed its payment.
Some time after its maturity the holder of the mortgage instituted foreclosure proceedings via ordinaria.
Mr. Taylor, an attorney at law of Lake Charles, was employed to conduct the proceedings. He wrote the petition and sent it to the clerk of court of Caddo parish to be filed and for service. It happened that about that time he met the defendant and requested his kindly offices in Caddo parish in directing proper proceedings and service of the papers.
It was, we are informed by the oath of defendant, a friendly service. The name of his firm appears as attorneys in the proceedings. But it (the firm) never was employed, nor the defendant personally.
There was a judgment rendered in the foreclosure proceedings via ordinaria, which became the property of J. H. Lucas, and the property also; and afterward the property upon which the mortgage bore was transferred to plaintiff’s .wife, and by the latter to her husband, the plaintiff.
Now, as to the asserted attorney; Plaintiff’s contention is that defendant, having been of counsel, is estopped from contesting the right of making the correction from section 26 to section 25; that defendant is absolutely concluded from urging any objection whatever in that regard.
At the time that suit was brought to foreclose the mortgage, defendant had already acquired a prescriptive title. Moreover, the friendly service can scarcely be considered in the light of attorney’s service rendered to plaintiff in his suit, nor to have estopped the defendant from 'contesting plaintiff’s claim.
It does not appear that plaintiff ever knew that defendant’s firm was of counsel. Neither the firm, nor the defendant in the firm, knew that the property here was involved in the mortgage proceedings.
He did not act with knowledge of the fact. Furthermore, he did nothing to influence the plaintiff or his authors touching the title in question.
So much for the estoppel.
Defendant avers that he has been in open, undisturbed, and peaceful possession as owner of the lands claimed by plaintiff over 80 years, in good faith, under title translative of property.
He particularly avers that he and the late ' James S. Ashton bought lots 1, 2, 3, 4, 5, 6, 7, and 8 of section 23 and lot 7 of section 25 at the succession sale of J. R. J. Daniel, and that they also bought lot 15 of section 14 from the same succession. 1
It happens that defendant bought Ashton’s interest in the land and became sole owner. Defendant also avers that he bought lots 11, 15, and 16 of section 23, and lots 3 and 7 of section 25, with other lots, from P. A. Leonard, on July 28, 1883, and that he also bought from the same vendor lots 2 and 8 of section 15.
Defendant further in substance avers that through an abundance of caution, to the end of avoiding a litigation (which he did not escape), he bought lots 3 and 7 in section 25 from J. D. Cawthorn.
The lands in controversy are all in the same township and range; that is, township 16 and range 13.
Plaintiff’s plea in regard to this dual purchase is that defendant showed no confidence in his first title (that is, the title by which he bought from the Daniel succession), by buying a second title — the. last title from Cawthorn to the same land.
We briefly dispose of this plea by the statement that it has no merit. Under the circumstances shown by the testimony, a person, may buy a title without, for that reason, abandoning all rights he may have- under a *921 prior title. If the last title is good to land, he holds thereunder. If it is not, he is still the owner under the first title.
Plaintiff’s contention is that he has a deed to all the lands he claims.
We agree with him in the statement. His demand might be complete, were it not that he is met by defendant’s counter title to the same land.
The dates of these respective titles are against the validity of those held by plaintiff.
For convenience in the discussion we will place them here near each other.
Plaintiff’s title to the greater portion of the land is dated December 31, 1872. It was recorded January 2, 1873. Defendant’s title bears the date February 29, 1872 and was recorded March 2, 1872.
It follows that defendant had a title of a prior date. He who is prior in time is stronger in right.
The rule is positive, and permits of no deviation, where there is no bad faith. A vendee being in good faith, no court would be justified in construing that an act recorded at a later date has the preference. We have not found that defendant was in bad faith in matter of the purchase of the land.
This disposes of the controversy as relates to all the land included in the deed made by the succession of Daniel to Ashton and Leonard in 1872, except as relates to the location of the land to which we will now refer.
Plaintiff seeks to overcome the objection, which is unanswerable, in regard to the dates of the respective deeds, by urging that defendant’s land, if properly described, does not fall within the lots which he owns, or, rather, that the lots would not then be correctly located — located as they now are in two maps, copied infra; and to sustain that contention he states that the property described in the deeds of Daniel to Ashton and of Ashton to Leonard, the whole of which Leonard afterward bought, was described into 40-aere lots as if it had been plotted as follows:.

Instead of this way (the following, plaintiff’s contention is, is the correct description of the situs of each lot):

If plaintiff’s contention was true, then the township subdivisions into sections and quarter sections would not include defendant’s land, but possibly leave some of the lots within the range of plaintiff’s demand.
We do not think that this can be done. It may be that the lots are not strictly within the subdivisions. None the less, the lots having been sold according to these numbers *923 of the map as shown above, and within the subdivisions adopted for the sale, we have no good ground upon which to hold that they are not included in defendant’s title. There cannot be any change made at this late date. These lots were sold as per map annexed to the deed, containing all the descriptions and in the subdivisions before mentioned. They indicate the property sold. If there is a conflict between the subdivisions and the numbers of the lots, the numbers must govern as placed within said subdivision.
The map indicates the starting point. It would be inconsistent with the acquired rights of parties to now change direction, so that many of the lines would run counter to the division of the lots and would be thrown out of the said subdivision.
We annex a sketch of the map itself which was recorded with the title. It shows natural boundaries that cannot be ignored. Those boundaries fix the place of different lots. After over 30 years it is late to make any change.

*925 More than this, the map points to the land and identifies it thoroughly.
The burden of showing that the asserted error was susceptible of correction was with plaintiff. He has failed in pointing out an error which can be corrected at this time without overlooking acquired rights.
A portion of the land was bought in 1882 by defendant from his brother, J. F. Leonard, as shown by the recorded deed, and he, in addition, claims title to lots 3 and 7, section 25, as having bought them from S. D. Cawthorn — a title to which we have before referred. Titles have been produced to those different lots. They are in evidence.
All of the lots form part of one body of land. The sketch shows the displacement in lines, were we to make the change for which plaintiff sues. His own title depends upon the map; i. e., he bought according to the said map.
Defendant went into possession in 1882 of the part of the land bought that year and of the part of the land bought prior to that time, and has since cultivated and improved part of the whole land. He was a possessor in good faith. Possession of part, with the intention of retaining possession of the whole, was possession of the whole tract. Brown, Tutor, et al. v. Broussard, Wife, et al., 43 La. Ann. 962, 9 South. 911.
His title was sufficient to transfer property. Meibaum v. Brennan, 49 La. Ann. 580, 21 South. 853.
The land was a connected and continuous tract, the boundaries were fixed, and all indicate possession of the whole tract. Donegan’s Heirs v. Matineau et al., 9 Mart. (O. S.) 43; Henderson v. St. Charles Church, 7 Mart. (N. S.) 122; Gillard and Others, Heirs, v. Glenn and Others, 1 Bob. 159.
Defendant’s improvement of the land and the cultivation proven are a sufficient indication of possession of the whole tract as an owner.
This was the view taken by the learned judge of the district court in his written opinion.
We have found no reason to differ from that view.
For reasons assigned, the judgment is affirmed.
LAND, J., recused.