(81 South. 334)

No. 23134.

STATE v. RATHBONE et al.

(March 3, 1919.)

*(Syllabus by Editorial Staff.)*

1. PUBLIC LANDS ⬥—16—CUTTING TIMBER ON STATE LANDS—BAD FAITH.

In an action for nullity of a contract and for restoration of what defendant received under an invalid contract from a school board of a parish to cut timber from a school section, the bad faith attributable to defendant is legal bad faith, the bad faith that is imputable to one whose ignorance of truth is due to his fault or negligence and not to his fraud or dishonesty.

2. PUBLIC LANDS ⬥—16—CUTTING TIMBER—ILLEGAL CONTRACT—DAMAGES.

In an action for nullity of an invalid contract with the school board of a parish to cut timber from a school section and for restoration of what defendant received under the contract, the basis for the calculations should be the value which the manufactured product had when the timber was taken and converted into lumber.

3. PUBLIC LANDS ⬥—16—REMOVAL OF TIMBER UNDER LEGAL CONTRACT—MEASUREMENT.

In such action the timber, in absence of agreement as to where diameter of logs should be measured, was to be calculated by amount of lumber that could be sawed the full length of the log, as measured by diameter of small end, though the average diameter should be taken in measuring timber long enough to be cut into sawlogs, according to the statutory Doyle rule.

4. PUBLIC LANDS ⬥—16—REMOVAL OF TIMBER FROM SCHOOL SECTION—AMOUNT—EVIDENCE.

In an action for nullity of an invalid contract with the school board of a parish under which defendant cut and removed timber from a school section and for restoration of what it received under the contract, evidence *held* to show that defendant pulled 6,844 trees, averaging 22.1 inches in diameter at the small end and 34 feet in length.

5. PUBLIC LANDS ⬥—16—CUTTING TIMBER FROM SCHOOL LAND—INVALID CONTRACT—DAMAGES.

A lumber company, cutting timber from a school section under an invalid contract with the school board of a parish, is liable for the market value that the manufactured product of the timber had when converted into lumber and shingles, *less* the cost of logging and manufacture, without any credit for the cost of labor spent for felling and taking away worthless timber.

Appeal from Twenty-Eighth Judicial District Court, Parish of St. Charles; Frederick A. Middleton, Judge.

Suit by the State of Louisiana against the Louisiana Cypress Lumber Company, Limited, and Joseph Rathbone. Dismissed as to defendant Rathbone, and judgment against the Louisiana Cypress Lumber Company, Limited, and plaintiff appeals. Judgment amended by increasing the amount and by allowing certain interest, and, as amended, affirmed.

L. Robert Rivarde, Dist. Atty., of Hahnville, and Edrington & Edrington, of New Orleans, special counsel, for the State.

Dart, Kernan & Dart, of New Orleans, for appellees.

O'NIELL, J. This suit was brought to recover from the Louisiana Cypress Lumber Company and its president, as debtors in solido, $315,000, alleged to be the value of cypress timber taken from a sixteenth section. The suit against the president was dismissed; the evidence being that he had acted only as president of the lumber company in the transactions complained of. Judgment was rendered against the lumber company for $11,248.52; and, as the plaintiff alone has appealed, the only question for decision is whether the judgment should be in-

creased in amount, and, if so, to what amount.

Appellant complains that the district judge erred in ruling that the defendant's liability was governed by the doctrine of the case of the State v. F. B. Williams Cypress Co., 131 La. 62, 58 South. 1033, where it was held that the defendant, who, under an unauthorized and invalid contract with the school board, had cut and taken the forest timber from a school section and converted it into lumber and cross-ties, was legally—though not morally—in bad faith, and was therefore liable for the manufactured product of the timber, less the cost of logging and manufacturing it. Appellant contends that the defendant in this case should be condemned to pay the value of the lumber into which the timber was converted, without deduction for cost of logging or manufacturing.

In this case, as in the case of the Williams Company, the defendant bought the timber, or acquired what defendant believed was the right to cut and remove it, from the school board of the parish in which the school section was situated. The school board, in this instance as in the Williams Company's Case, had no authority in law to make the contract. It is not contended, however, that the defendant, or the school board, was guilty of dishonesty or fraud in the transaction. There is not an allegation in the petition that could be construed as a charge that defendant was guilty of collusion with the school board, or fraud, dishonesty, or imposition in the manner of acquiring the timber. The charge is merely that a certain contract previously entered into between the school board and a third party, from whom defendant acquired it, and a renewal of the contract, given afterwards by the school board to defendant for a cash consideration, were "illegal, null, and void, and should be so decreed, for the following reasons, to wit." The reasons, stated broadly, are: (1) That the board did not submit the proposition to a vote of the residents of the township; (2) that the board did not give notice of the time when or place where the property would be sold; (3) that the contract, purporting to be a lease, but purporting also to give the right to take away the standing timber, was not awarded to the highest bidder or offered at public auction; (4) that the contract did not have for its object the conservation of the property, but purported to give the right to take away the timber, which was the only value of the property, and that it was therefore prima facie illegal; (5) that the price paid was inadequate; (6) that the contract was not authorized by any act of Congress or statute of the state, and could not have been valid without such authority. The prayer of the petition was that the contract be decreed illegal, null, void, and of no effect, that the defendants be decreed to have been possessors in bad faith, and be ordered to return the lumber into which the timber had been manufactured, amounting to 9,000,000 feet board measure, or, in the alternative, be condemned, in solido, to pay the value thereof, $315,000, with legal interest from judicial demand. The suit, therefore, is not an action for trespass, but an action for nullity of a contract and for restoration of what was received by the defendant in virtue of the contract.

[1, 2] It is true, plaintiff made the allegation—which we regard as a conclusion of law from the facts alleged—that defendant was a possessor in bad faith. But the bad faith that is attributable to the defendant, in a case such as the plaintiff has set forth and proven, has been adjudged legal bad faith— the bad faith that is imputable to one whose ignorance of the truth is due to his fault or negligence—not fraud or dishonesty. The measure of liability in such case is the rule laid down in the Williams Company's Case

and adopted by the district judge in this case; that is, the value of the manufactured product, less the cost of logging and manufacturing.

Our opinion is that the district judge was correct in his ruling that the basis for the calculation should be the value which the manufactured product had at the time the timber was taken and converted into lumber. To take the value at the time the suit was filed would be a matter of speculation. The plaintiff has no more right to the advantage resulting from an increase in value than the defendant would have to the advantage if the value had decreased. We cannot assume that the timber would have remained unsold and uninjured when this suit was filed, 17 years after the trees had been cut and taken away, if the defendant had not made the contract with the school board. As a matter of fact, the school board had made the contract with another party, from whom defendant acquired it after a part of the timber had been felled and taken away. Hence the loss that the plaintiff sustained on account of the defendant's dealings, in this case, must be determined by the value the lumber had at the time of the operations complained of.

[3, 4] We find no difficulty in approximating the quantity of timber taken by the defendant. Plaintiff employed three expert estimators, and defendant two, who went into the swamp and counted the trees and measured or estimated their size from the remaining stumps and tops, and testified in the case. Defendant also produced as a witness the woods foreman who had superintended the logging operations and measured or estimated the size of each log that was hauled out by the pull boat, and who produced his book containing the log scale made at the time. One of the estimators employed by plaintiff testified that, according to his estimate, the quantity of timber taken by defendant was 6,081,208 feet and that the trees deadened and left standing amounted to 349,-050 feet. Another estimator employed by plaintiff testified that the quantity of timber removed by defendant was, according to his estimate, 6,962,856 feet and that the amount deadened and left standing was 731,-448 feet. And the figures given by the third estimator for plaintiff were: Timber removed 5,343,750 feet; timber deadened and left standing 971,250 feet. One of the estimators employed by defendant testified that, according to his measurements or estimates, 4,932,-000 feet of timber had been removed and 971,250 feet deadened and left standing; and the other testified that his measurements or estimates showed that only 3,703,000 feet of timber had been removed by defendant, and that 411,125 feet had been deadened and left standing. The log scale produced and verified by the witness who had served as woods foreman showed that 4,480,000 feet of timber had been pulled. The district judge, giving equal credit to each of the five estimators and the same credit to the log scale, adopted the general average. But the accuracy of the log scale, made from actual measurements taken when the timber was pulled, is so satisfactorily verified, as to the number and size of the logs, that we see no reason for rejecting it and adopting the varying estimates of the witnesses. The log scale is particularly acceptable in view of the fact that the result obtained by applying the Doyle rule to the number and the average size of the trees shown on the log scale gives a result slightly below the average estimate if we include the trees deadened and left standing, and slightly above the average estimate if we deduct the standing timber from the average estimate. The evidence discloses that, on account of an error in the survey and location of the north boundary line of the section, some timber was taken from the adjoining section above. Deducting the es-

timate of that timber from the log scale, we find that defendant pulled from the sixteenth section 6,844 trees. The average size of the logs pulled, according to the log scale, was 22.1 inches in diameter at the small end and 34 feet in length. The log scaler applied the Doyle rule to the diameter at the small end, which, according to our ruling in the case of Peter v. Owl Bayou Cypress Co., 137 La. 1067, 69 South. 840, was not the correct method of measuring timber of that length. The rule laid down in that case, and the one which we think should be adhered to, in the absence of an agreement as to where the diameter of the logs should be measured, is that, as the quantity of lumber that can be sawed the full length of a log is limited by the diameter at the small end, that diameter alone should be measured in computing the board measure of sawlogs, but the mean or average diameter should be taken in measuring timber that is long enough to be cut into sawlogs for the mill. The evidence in this case is that a cypress log 34 feet long should be measured as two logs, one 16 feet long, measured from the butt, and the other 18 feet long. It appears also that the timber in question tapered so that the small diameter of the 16-foot butt logs would have been 30 per cent. less than the butt diameter, and that the small diameter of the 18-foot logs would have been 10 per cent. less than the diameter at the large end. Hence, dividing 22.1 inches by .90, we get 24.5 inches as the top diameter of the 16-foot logs, and, dividing that figure by .70, we get 35 inches as the butt diameter. They being sawlogs, however, the latter figure may be disregarded. The Doyle rule, adopted by a statute of this state, is this: Subtract 4 from the number of inches in the diameter; divide the remainder by 4; square the result; and multiply the product by the number of feet in the length of the log. Applying that formula to the smaller diameter of each sawlog, in this case, we find that each log measuring 22.1 inches x 34 feet contained 788.81 feet board measure, viz.:

Butt log $\left(\frac{24.5-4}{4}\right)^2 \times 16$ . . . . . . . . . . . 420.25

Top log $\left(\frac{22.1-4}{4}\right)^2 \times 18$ . . . . . . . . . . . . 368.56

Total board measure of log
22.1″ × 34′  . . . . . . . . . . . . . . . . . . . . . 788.81 ft.

The 6,844 logs, averaging 22.1 inches in diameter at the small end and 34 feet in length, therefore contained 5,398,615 feet of timber.

[5] Our conclusion is that the defendant lumber company is liable for the market value that the manufactured product of the 5,398,615 feet of timber had at the time it was converted into lumber and shingles, less the cost of logging and manufacturing. Plaintiff's counsel did not furnish proof of the value of the manufactured product, nor of the cost of manufacturing; and we have to rely largely upon the testimony of the president of the defendant company for that information. He testified that the timber was of such inferior quality that it produced only a third of its measure of merchantable lumber and a third in shingles, at 700 shingles per M feet of timber; that the highest grade of lumber produced was worth $22 per M feet; that the shingles were worth $1.60 per M; and that the cost of logging and manufacturing was $12 per M feet for the lumber and $3.50 per M feet extra for the timber that went into shingles. We are assured by other evidence in the record, however, and from a general knowledge, that the witness meant that a third of the timber produced, not 700, but 7,000, shingles per M feet of timber; that $22 was the price, not of the highest grade, but of the average grade, or mill run, of lumber manufactured; and that the extra cost of $3.50 per M feet of timber that went into shingles was in addition, not to the cost of manufacturing lum-

ber, but to the cost of logging the timber that went into shingles. There is no doubt about our having to make those corrections in the figures, which were accepted at their face value by the district judge. He found that the defendant was liable for the net value of (or profit made on) only 4,488,864 feet of timber; that a third of the timber, therefore, produced 1,496,288 feet of lumber, which, costing $12 per M feet for logging and manufacturing, and, being worth $22 per M feet, left a profit of $10 per M feet, or $14,-962.88 for the third of the timber that went into lumber. The district judge also figured that the 1,496,288 feet of timber that went into shingles produced 10,497,200 (should be 10,474,016) shingles, which, at $1.60 per M, were worth $16,795.52 (should be $16,758.42). He also calculated that the cost of the shingles, at $13.50 (perhaps he meant $15.50), amounted to $20,509.88 (should be $20,199.88), entailing a loss of $3,714.36 (should be $3,-404.36) on the shingles, which, deducted from the $14,962.88 profit on the lumber, left a net profit of $11,248.52 (should be $11,558.52), for which he gave judgment.

The evidence is that the cost of logging was about $5 per M feet of timber. Accepting the figures furnished by the president of the defendant company as to cost and values, we find that, of the 5,398,615 feet of timber taken, the one-third, 1,799,538 feet, that went into lumber worth $22 per M feet, produced $39,589.84; and that the 1,799,538 feet of timber that went into shingles, at 7,000 shingles per M feet of timber, at $1.60 per M shingles, produced $20,154.82. Hence the total value of the manufactured product was $59,744.66. The cost of logging and manufacturing of 1,799,538 feet of lumber, at $12 per M, was $21,594.45, and of 12,596,766 shingles (1,799,538 feet at $8.50) was $15,296.07; hence the total cost of logging and manufacturing was $36,890.52, which, deducted from the value of the manufactured product, leaves $22,-854.14, for which the defendant company is answerable.

We have made no allowance for the cost of logging the third of the timber, 1,799,538 feet, which the president of the defendant company said was of no value. Our judgment, from other evidence in the case, is that the witness underrated the quality of the timber. Bearing in mind that the lumber tally usually overruns the log scale of cypress timber about 30 per cent. (particularly as this timber was measured), bearing in mind, too, that this timber was docked for defects, and that due allowance for slabs is provided for in the Doyle rule, and bearing in mind, above all other considerations, that the defendant company paid the school board a cash consideration for a renewal of the contract after having sawed a part of the timber, and then continued logging and sawing it for a year or more, we doubt that one-third of the log scale went into the furnace or the slab pile, and that the manufactured product accounted for only two-thirds of the log scale. If it be so, however, the defendant is not entitled to any credit for the cost of labor expended in felling and taking away the 1,799,538 feet of worthless timber belonging to the state.

The judgment appealed from is amended by increasing the amount to $22,854.14, and by allowing legal interest thereon from judicial demand, that is, from April 10, 1917; and, as amended, the judgment is affirmed, at defendant's cost.

PROVOSTY, J., concurs in so far as the defendants are condemned, but thinks that they should have been held to have been in bad faith.