ROGERS, J.
Plaintiff, as the owner of the Whitehall plantation, in the parish of St. Bernard, instituted this suit to recover the value of certain timber which he alleged was removed and appropriated from the rear part of said plantation by the defendant company.
Defendant first filed a motion to have plaintiff elect whether ,he was grounding his action upon a claim of ownership or upon a claim of possession. This motion was denied. Defendant then' filed an exception of no cause of action and a peremptory exception .setting up the contention that, plaintiff’s action being one in trespass based upon possession of the property, he had not such possession as entitled him to institute the action, nor had the action been brought within the time provided by law. These exceptions were overruled.
Defendant, also, filed a plea of prescription of one year. This plea was tried separately and overruled.
After answer filed by the defendant, and after a plea of prescription of 10 and 30 years aequirendi rcausa filed by plaintiff, the case was tried on the merits, and judgment was rendered in favor of plaintiff in the sum of $6,456.82, with interest and costs. From this judgment defendant has appealed.
The motion to elect, the exception. of no cause of action, and the so-called peremptory exception involve the same issue. They were all filed upon the theory that plaintiff was. attempting to cumulate possessory and petitory actions in the same suit.
An examination of plaintiff’s petition shows that he alleged he “is the true and lawful owner” of Whitehall plantation, and set forth his chain of title thereto. He further averred that he was then and since the date of his acquisition in open, notorious, full, actual, peaceful, undisturbed, and uninterrupted possession, and that his authors in title were in like possession from time immemorial. And in paragraph XVI of the petition it is further alleged:
“That notwithstanding petitioner’s full and complete otmership.of said property, and all of the appurtenances thereunto belonging, the said defendant, the said St. Bernard Cypress Company, 'well lenowmg petitioner’s title to said property, as he believes and avers, trespassed on the rear of petitioner’s said property,” etc. (Writer’s italics.)
From the averments of the petition, it is clear that the action is neither petitory nor possessory in character, but is one sounding in damages for the cutting and appropriating timber on land claimed to be owned by plaintiff. On the merits, appellant makes the defense that it was the owner of the timber cut and removed from the land in controversy, having acquired it by purchase from the owner of the land. Both sides, claiming the superiority thereof, put their respective titles in evidence.
It is true that, in the brief filed with the district judge, counsel for plaintiff characterized the suit as one for “trespass (possessory),” but it does not follow, as is strenu *580 ously contended by counsel for defendant, that the action is possessory, and that plaintiff’s right to damages for trespass must be considered and determined upon his claim of possession and not upon his claim of ownership of the property. Thei character of a suit is determined by the substance of the demand, and not by mere form of expression. Hinrichs v. City, 50 La. Ann. 1214, 24 South. 224. The facts alleged, and not the erroneous appreciation thereof by the pleader, control the issues. State v. Rightor, 37 La. Ann. 843; Hornor v. McDonald, 52 La. Ann. 396, 27 South. 91.
If, however, plaintiff’s suit be open to the construction that it is an attempt to cumulate petitory and possessory actions, the penalty therefor would not be dismissal of the suit, but would only result in the waiver of the advantage of possession conferred by law upon plaintiff, and the right would be given to defendant to at once have the question of ownership passed upon and decided. Jackson v. Currie, 144 La. 89, 80 South. 210.
Defendant’s counsel have cited a line of decisions as holding that a suit of the nature of the instant case is essentially a possessory action which can only be brought where possession, and not ownership, is alleged. We deem it unnecessary to name the cited cases, because none of them is as broad and as far-reaching in its pronouncements as is contended for by counsel. These decisions are merely to the effect that an action of the character of the instant one may be maintained by a possessor under the conditions required for the possessory action without putting his title at issue. None of the cases declares that such a suit cannot be brought by one claiming ownership of the property. It would be unreasonable and illogical to hold that one enjoying merely the possession of property could maintain an action for the value of timber cut and taken therefrom, while arl owner, having complete dominion thereof, would be precluded from asserting any such right. The correct rule is that an action of the character mentioned, may be maintained either by a possessor having a right to a possessory action or by an owner having a right to an action for the value of timber cut and removed from his land. Harang v. Bowie Lumber Co., 145 La. 96, 81 South. 769; Interstate Trust & Banking Co. v. Picard & Geismar, 147 La. 433, 85 South. 65.
The plea of prescription of one year is based upon article 3537 of the Revised Civil Code, as amended by Act No. 33 of 1902. The article of the Code as amended reads:
“The prescription mentioned in the preceding article runs * * * where land, timber or property has been injured, cut, damaged or destroyed from the date knowledge of such damage is received by the owner thereof.”
Defendant adduced testimony on the plea showing that the timber in question was bought by it between August and October, 1913. Plaintiff, in his testimony, showed that he had purchased the property in 1912, at which time he was engaged in liquidating a wholesale grocery, business in which he had been engaged in the city of New Orleans ; that he did not go on the plantation at all until the latter part of October or the beginning of November, 1914, when he undertook to make some improvements thereon, and thereafter he visited the place once or twice a week until the late spring or early summer of 1915, when he went to live thereon. He testiüed he first discovered in January, 1915, that defendant had cut and re: moved the timber. In his testimony he goes into the details of the manner in which the discovery was made. Without tracking his testimony, it is sufficient to say that it bears not only the earmarks of truth, but also of probability. It was in no way controverted by the defendant, whose sole reliance for the maintenance of the plea seems to be based upon the theory that plaintiff should have known, if in point of fact he did not *582 know, of the alleged trespass. In Schwing Lumber & Shingle Co. v. Peterman et al., 140 La. 71, 72 South. 812, this court said:
“This being an action in damages for the unauthorized pulling, by defendants, of timber belonging to plaintiff, the uncontradicted testimony, offered on behalf of plaintiff, as to the date upon which plaintiff received notice of the depredation, sufficiently establishes that date for the purposes of an exception of prescription, notwithstanding that it appears that the information might have been sooner acquired but for the fact that the ownership .of the particular timber in question had been overlooked.”
As plaintiff’s knowledge of the depredation complained of was, acquired only in January, 1915, and his suit was instituted in November, 1915, his action was not barred by the prescription invoked by defendant, and the district judge was correct in overruling the plea.
Plaintiff owns the Whitehall Plantation, which is situated in the parish of St. Bernard at a distance of about 4 miles from the Mississippi river, and fronts on the left descending bank of Bayou Terre-aux-Bouefs, and having a depth, as he contends, of 40 arpents.
Defendant, as the purchaser of the timber thereon, relies upon the title of Mrs. Marie Durcros Millaudon to the lands in the rear of the 40-arpent line of the Ducros or Millaudon plantation, running back a league and a half, which property is also situated in the parish of St. Bernard. The Ducros or Millaudon plantation originally fronted on the Mississippi river, but was subdivided into 10 lots or portions of ground up to the 40-arpent line and sold to various purchasers by acts of sale executed before Charles T. Soniat, late a notary public for the parish of Orleans, on March 16, 1911.
Both plaintiff and defendant have offered proof of their respective titles.
Plaintiff traces his title in unbroken links to 1878, and in broken links to the year 1818, and prior to that time, to a putting in possession between the years 1779 and 1783 by the King of Spain through his commandant of the Terre-aux-Bouefs Post.
Defendant traces the title of Mrs. Millaudon, also in broken links, back to two alleged grants made by the French government to one Charles Le Sassier in the year 1762.
Many of the records concerning the titles were not produced by the parties because of their loss by the fire which on March 2, 1884. destroyed the courthouse of the parish of St. Bernard.
During the Spanish régime, between the years 1778 and 1783, the section of the country lying on the Terre-aux-Bouefs was settled by emigrations from the Canary Islands, under the direction of the King of Spain. Each of said emigrants was given a portion of land, which was varied in quantity in proportion to the number of individuals in each family, said variations occurring in the Width from 2 to 4 arpents, and not in the depth, which was a uniform one of 40 arpents, on the land assigned.
The Ducros or Millaudon plantation, running back from the Mississippi river, first 40 arpents, and then, as claimed by defendant, a league and a half from the 40-arpent line, overlapped the lands assigned to these Spanish emigrants.
In proceedings had before the Land Department between the owners, of the property along the Bayou Terre-áux-Bouefs and the owners of the Ducros property concexming these titles, the Commissioner of Lands, in a report submitted to the House of Rep: resentatives, of the United States under date of December 27, 1831, recommended the recognition and confirmation of-the titles of the property owners along the Bayou Terreaux-Bouefs. See American State Papers, Duff Green’s Edition, vol. 5, p. 535. Congress passed an act June 5, 1832, confirming the grants along the Bayou Terre-aux-Bouefs, with the proviso that the act should *584 be only considered as a relinquishment on the part of the United States, and not to interfere with the rights of others.
Defendant claims that the French grant made to Charles Le Sassier on August 12, 1762, as per deed and instrument recorded March 13, 1816, in the United States Land Office, was recognized as a complete title under the French government at the time of the session of Louisiana to the United States, and as authority for said claim refers to a letter addressed by Wm. A. J. Sparks, Commissioner, to the register and receiver, New Orleans land office, December 17, 1885. We have failed to find a copy of this letter in the transcript, nor have we been able to find the report submitted by the Commissioner of the Land Office holding said claim to be valid under the French government, and as constituting a complete title needing no confirmation. i
Although called for by plaintiff defendant failed to produce the French grant on which it claims the .title of Mrs. Millaudon is based, and also failed to produce the acts before the notaries De Quinones, Pedeselaux, and Perdono, links which it asserts connect its title with the grant.
If, however, it be conceded that defendant’s title goes back to the alleged French grant, and that the Land Department of the federal government has held said grant to be a complete title, and not necessary to be confirmed, nevertheless the ruling of the said Land Department is nothing more than the opinion of the Commissioner of the Land Office; it is not conclusive, and does not preclude a legal investigation and judicial decision as between the parties. Its only effect was as an announcement that the United States government was not asserting any right or claim to the property. The matter here in dispute was never litigated before the court, and no judicial determination was ever had as to these titles, although in the case of United States v. Ducros, 15 How. 38, 14 L. Ed. 501, it was strongly intimated that the Ducros plantation ran back only. 40 arpents from the Mississippi river.
Under the French grant, as claimed by defendant, the Ducros or Millaudon plantation, as heretofore stated, would extend back from the river beyond the 40-arpent line to a sufficient distapce to conflict with the lands of the settlers along 'Bayou Terreaux-Bouefs.
Defendant admits that Mrs. Millaudon and her authors in title never had actual possession of the property in dispute, and that their possession thereof was only constructive, but it avers that plaintiff’s possession, likewise, was only constructive, and that, as there appears to have been two overlapping constructive possessions, plaintiff’s constructive possession could not oust the older constructive possession of Mrs. Millaudon and her authors, arising from their possession of the lands fronting on the Mississippi river.
The record shows, however, that the Ducros or Millaudon plantation, as claimed by defendant, was not one contiguous body, at the time this proceeding was instituted and for many years prior thereto, but in reality was two noncontiguous tracts; that it was cut into two distinct tracts of land by two of the plantations fronting on Bayou Terreaux-Bouefs (Sebastipol and Ducros), and it was also overlapped almost entirely by the lands of the original settlers along the said bayou. It is likewise shown by the testimony of the witness Bourg that for 40 or 50 years there was a wire fence separating the Millaudon property from the Sebastopol plantation up to the 40-arpent line.
Therefore the possession of the front or river portion of the Millaudon plantation was insufficient to give possession of the rear or swamp part from which it was separated in the manner stated. Leader Realty Co. v. Lakeview Land Co., 133 La. 653, 63 South. *586 253; Gulf Refining Co., v. Jeems Bayou Hunting & Fishing Club, 129 La. 1026, 57 South. 322; Ruddy v. Carter, 166 U. S. 493, 17 Sup. Ct. 640, 41 L. Ed. 1090.
Plaintiff, on the other hand, has shown something more than a mere constructive 'possession. He has established actual possession through himself, and through his authors in titles, of more than 30 years, and, under his plea of prescription ,of 10 and 30 years acquirendi causa, is entitled to have his ownership of the property in- dispute recognized and maintained.
In support of his plea of prescription, plaintiff has shown that the said Whitehall plantation was purchased, under its present description, by an act translative of properly, by the late Gen. Albert Estopinal, from Felix Gonzales, March 17, 1879, which act was duly recorded.
It is established by the evidence of Gen. Estopinal, who was produced as a witness on behalf of plaintiff, that he was bom in the parish of St. Bernard in the year 1845; and that he always resided within a mile of Whitehall plantation when not actually residing on said place; that at the time he purchased the place it was improved; there were buildings, 'fences, gardens, residence, roads, and two canals used for drainage and to float logs, running the entire depth; that he caused two surveys to be made and the boundaries to be established; that he lived on the plantation until 1888, during which time he cultivated it; that it was in a high state of cultivation, a mo'del farm; .that between 1888 and 1892 he cultivated it through the tenant system; that in 1892 it was occupied by his son, Albert Estopinal, Jr., now, and for many years, sheriff of the parish of St. Bernard, who lived on the place for 15 years; that during all these years the cultivation of the place continued; that up to the time of the sale' to the Friseoville Realty Company, in 1905, there were buildings and fences on the place, and he continued to cultivate it; that he cut logs, to be used for fence pickets and for cross-ties, and firewood-from the rear of the place; that during the whole of the time of his ownership he had two, or three men constantly at work in said swamp cutting and bringing out timber; and that he did not permit any one to encroach upon the property. ‘ Gen. Estopinal served as sheriff of the parish of St. Bernard, and was at one time president of the pblice jury. He was also a former Lieutenant Governor,of the state and a member of Congress, representing the first congressional district.
Albert Estopinal, Jr., remembers the time his father purchased the property; that the place was improved; that there were residences, barns, stables, roads, ditches, and canals thereon; that it was cultivated by his father up to about 1887, and' after 1887 to about 10 years before the date on which he testified by tenants; that it was cultivated continuously; that Mr. Pfister was cultivating it; that he lived on the plantation up to about 10 years prior to the date of his testimony ; that timber was cut from the swamp in the rear of the property.
Alexander Perrin testified that he had been the manager of the Friseoville Realty Company from its organization; that he remembers when his company purchased Whitehall plantation; that during most of the time of the company’s ownership it was rented, first to Albert Estopinal, Jr., and then to a truck farmer; that there were houses, roads, and canals up to the 40-arpent line; the place was cultivated, timber cut, and no one ever contested his company’s possession.
Albert Estopinal, Jr;, who, as sheriff, was the tax collector of the parish, testified that no one besides those claiming to be owners of the plantations on Bayou Terre-aux-Bouefs paid taxes on the plantations front *588 ing the bayou. To the same effect is the testimony of Gonzales, parish assessor, who further testified the Millaudons were assessed only for a depth of 40 arpents from the Mississippi river.
 Under this showing, plaintiff has established his possession of the property in dispute, first, by virtue of the legal principle that possession as owner of part of the property,, with title to the whole, is possession of the whole (Gillard v. Glenn, 1 Rob. 159; Broussard v. Gonsoulin, 12 Rob. 7; Railsback v. Leonard, 118 La. 925, 43 South. 548; La. Land Co. v. Blakewood, 131 La. 550, 59 South. 984; Railsback v. Keith, 142 La. 747, 77 South. 586); second, the physical acts of ownership performed by plaintiff and his authors in title on the rear or swamp portion of the property constituted a sufficient possession to establish title by the prescription invoked by plaintiff (Miller v. Albert Hanson Lumber Co., 134 La. 230, 63 South. 883; Barrow v. Wilson, 38 La. Ann. 214).
Wihile we are therefore of the opinion that plaintiff is entitled to a recovery, we believe the amount awarded by the district court is excessive.
In order to establish the quantity and value of the timber removed each of the parties availed himself of the services of an expert. Plaintiff’s expert testified that an average of 12 trees per acre were removed from approximately 80 acres; that the trees averaged over 48 feet long, with a top diameter of 14 inches and a butt diameter of 28 inches. To ascertain the board measure in these trees the Scribner-Doyle rule was applied. Act 147 of 1900. The formula of the rule has been given by this court in Peter v. Owl Bayou Cypress Co., 137 La. 1067, 69 South. 840, and State v. Rathbone et al., 144 La. 835, 81 South. 334. In these cases the court also held that—
“In the measurement of long timber it is fair to both parties interested to take the mean diameter of the log, and that it is not fair to the seller to measure the diameter only of the small end.”
Defendant’s expert testified that 603 cypress trees, of the average dimensions of 42 feet long, 16 inches top, and 28 inches butt were pulled.
The 960 trees removed, according to plaintiff’s expert, contained 832,320 feet in all, and the 603 trees removed, according to defendant’s expert, contained 512,851.5 feet.
These estimates were apparently averaged by the district judge, and showed 672,585 feet removed, which, on the basis of $9.60 a thousand feet, amounted to $6,456.82, for which judgment was rendered.
Plaintiff’s expert, however, testified that he only counted the trees removed from three of the acres, and upon that basis estimated the number of trees removed from the whole tract. Defendant’s witness, on the other hand, testified that he made an actual count of the trees taken from the property. The court, under this showing, is compelled to accept the estimate of defendant’s witness as being the more accurate. This estimate showed the removal of 603 trees, containing 512,851.5 feet, the value of which at $9.60 a thousand feet is $4,923.36, which is the amount which should have been allowed plaintiff.
Counsel for defendant not only contends for the correctness of the estimate of its expert as to the quantity of the trees taken from the property, but sets up the further claim that the amount of board feet in said trees should be obtained by using the diameter of the small end, and not the average diameter, under the interpretation placed upon the Scribner-Doyle rule by this court in the cases of Foscue v. Black Bayou Lumber Co., 118 La. 725, 43 South. 387, and Bulkley v. Whited & Wheless, 113 La. 396, 37 South. 5.
In advancing this claim counsel for de *590 fendant have taken cognizance of the decisions of this court in Peter v. Owl Bayou Cypress Co., 137 La., 1069, 69 South. 840, and State v. Rathbone, 144 La. 835, 81 South. 334, overruling the decisions in 118 La. and 113 La., but they seek to escape the effect of the later jurisprudence by showing it is not applicable to the instant case because the cutting and removing of the timber herein complained of took place when Act No. 147 of 1900 was enjoying the construction placed upon it by the former jurisprudence. The contention is made that to deprive defendant of the benefit of the former decisions would be to deprive it of a vested right and its property without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States. Counsel have cited a number of cases in support of their proposition. An examination of the cited eases will show that they are inapplicable to the case at bar.
Vested rights can only arise from contracts, from statutes, and from the operation of law. As a mere trespasser, defendant acquired no vested right in the land nor in the trees removed therefrom. Besides:
“There is no vested right in the decisions of a court, and a change of decisions by a state court does not constitute the passing of a law, although the effect of such change is to impair the validity of a contract made in reliance on prior decisions.” 6 R. C. L. p. 332.
“The decisions of the state courts are not laws within the prohibition against the impairment of the obligations of contracts.” 6 R. C. L. p. 332.
And, by a parity of reasoning, there is no vested right in the decisions of a state court which are not laws within the constitutional provision against the deprivation by the state of any person of his property “without due process of law.”
For the reasons assigned, it is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by reducing the amount of said judgment in favor of plaintiff and against the defendant from $6,456.82 to $4,933.36, and that as thus amended the said judgment be affirmed. Plaintiff to pay the costs of appeal.
LECHE and THOMPSON, JJ., take no part.
Rehearing refused by the WHOLE COURT.