I think the so-called "Gibson children," that is, those children who were born to Richard Gibson and Louisa Tyson, were the legitimate heirs of their parents. The testimony warrants this conclusion under the cases of Tyson v. Raines, 165 La. 625, 115 So. 803; Boykin v. Jenkins, 174 La. 335, 140 So. 495; and Succession of Anderson, 176 La. 66, 145 So. 270. I dissent.

### HAMMOND LUMBER CO., LIMITED, v. HIGGINS.

#### No. 1689.

Court of Appeal of Louisiana. First Circuit.

March 5, 1937.

J. H. Morrison, of Hammond, and A. B. Pierson, of Ponchatoula, for appellant.

Reid & Reid, of Hammond, for appellee.

DORE, Judge.

Plaintiff instituted this petitory action in which it seeks to be decreed the owner and be put in possession of the south half of Headright No. 38, Tp. 6, R. 8, in Tangipahoa parish, containing 320 acres. Plaintiff sets out the chain of title by which it acquired said property, and alleges that the defendant has taken possession of a part of an 80-acre tract contained in the larger tract and refuses to surrender possession of the same. The defendant sets up title to the 80-acre tract from W. Lee Stevens in 1925 and avers that she and her authors in title have been in possession of said 80-acre tract for more than thirty years; that the plaintiff has not had possession of said property during said period. She pleads

the prescription of ten and thirty years under her title and the title of her immediate vendor. The defendant called her vendor in warranty, but it does not appear that the warrantor was ever cited, nor did he file any answer. The judgment makes no mention of the call in warranty, and we conclude that the call in warranty is no longer an issue in the case.

There was judgment below in favor of the plaintiff as prayed for, and defendant has appealed.

The record shows that plaintiff acquired the 320-acre tract of land from Cornelius Stevens on June 21, 1905. The 80-acre tract, the only part of this land in controversy, lies in the eastern part of this 320-acre tract, being all of this south half of Headright No. 38 lying east of Chappapela creek.

Defendant claims title to this 80-acre tract by virtue of a deed from W. Lee Stevens to her on October 28, 1925, in which deed Stevens conveyed to defendant 80 acres in H. R. 38, T. 6 S., R. 8., acquired of C. P. Terry, more particularly described as that portion of said H. R. 38 lying east of Chappapela creek. Defendant filed in evidence another deed from C. P. Terry to W. Lee Stevens, dated June 21, 1902, covering 80½ acres of land in H. R. 38, T. 6 S., R. 8 E., being same land acquired by vendor, C. P. Terry at tax sale on May 28, 1901, and sold in the name of Thos. L. Terry, for the taxes of 1900. We do not find any deed in the record of the tax sale referred to in this latter deed wherein C. P. Terry acquired this land at tax sale for the taxes of 1900 assessed to Thos. L. Terry. There is shown, however, in an abstract entry in the record of a suit introduced by defendant, a tax sale, May 28, 1901, to C. P. Terry, under an assessment in the name of Thos. L. Terry for the year 1900, in which tax sale C. P. Terry purchased 80½ acres of land in H. R. 38, T. 6 S., R. 8 E.

The record also shows that on May 30, 1903, under an assessment in the name of W. L. Stevens for the unpaid taxes of 1902, the sheriff adjudicated to the state 80 acres in H. R. 38, T. 6 S., R. 8 E., acquired of C. P. Terry, but this adjudication was canceled in favor of Stevens on October 23, 1925, so this adjudication in no way affects the title.

The record shows that defendant, and others under her authority, built a house on part of this 80-acre tract, fenced and cultivated part of it, and otherwise exercised acts of ownership since 1925. The record does not show any acts of physical possession of any part of this 80-acre tract by W. L. Stevens prior to his transfer of it to defendant in 1925. Even conceding that plaintiff had no possession of this tract, it is evident that defendant has not shown possession for thirty years and, therefore, under no theory could she claim ownership under her plea of thirty years' prescription.

In 1926, W. L. Stevens brought suit against defendant seeking to have the sale of this property to her canceled and rescinded for nonpayment of the purchase price. In answer to that suit and as a part of her defense thereto, defendant alleged that there were two outstanding titles of adverse ownership which Stevens had agreed to correct and had failed to do so. That suit appears to have been compromised and the consideration for the land paid by defendant. The defendant had procured an abstract of the property on which was shown the title of the plaintiff to this property. While the defendant denies any knowledge of the title held by plaintiff to the property as shown on the abstract, yet in view of the fact that she made judicial allegations in her answer to that suit she must be charged with knowledge of this outstanding adverse title. The testimony of defendant's husband is to the effect that he sought to purchase this property for his wife from the plaintiff herein, and upon its refusal to sell, then sought Mr. Stevens, and the result of his visit to Mr. Stevens was the sale relied upon in this action. From all of this evidence, it is evident therefore that when defendant took possession of this property, she knew that plaintiff claimed it as owner. With this knowledge before her, she took possession of the property and accepted the deed.

Where a person takes possession of land under a title, knowing that another person is claiming ownership of the land under a recorded title, the possession of such person is in bad faith and cannot serve as the basis of the ten years' prescription. See article 3452 of the Revised Civil Code; Southwestern Gas & Electric Co. v. Nowlin, 164 La. 1044, 115 So. 140, and other cases cited under this article. Therefore, both pleas of prescription set up by de-

fendant are not well founded and were correctly overruled by the lower court.

In order for a plaintiff to recover in a petitory action against one without a title, it is sufficient for plaintiff to show a title to the property, translative in form, which antedates the possession of the defendant. Gravenberg v. Savoie, 8 La.Ann. 499; Taylor v. Williams, 162 La. 92, 110 So. 100. Plaintiff in this case has shown a title, translative of property, prior in date to the possession of defendant. But the defendant is claiming this 80-acre tract under a title also, and in order for plaintiff to recover, it must show a title prior in time and stronger in right than that set up by the defendant. See Railsback v. Leonard, 118 La. 916, 43 So. 548.

Now, defendant has shown title to the 80-acre tract from W. L. Stevens in 1925, and a title in Stevens resulting from his acquisition by authentic act of sale of date of June 21, 1902, from C. P. Terry. It therefore is incumbent on plaintiff to show that it has a title to this 80-acre tract prior in time to June, 1902, and better in right. There is no question but that the title from Cornelius Stevens to plaintiff in 1905 covers this 80-acre tract. It therefore becomes necessary to determine the kind of title that Cornelius Stevens had to this 80-acre tract when he sold it to plaintiff.

In support of its superior title to this property, plaintiff has introduced in evidence several titles to show the chain of title back to Alexander Bookter who acquired all of Headright 38 from the government. From these titles it appears that Bookter sold the south half of said Headright to James S. Morgan in 1821. Morgan conveyed the same property to Betsey Terry, wife of Thos. O. Terry, and unto John O. Terry in 1833. There next appears a sheriff's deed dated in 1888 transferring all of the undivided half interest of J. O. Terry & Sons in said land unto Benjamin A. Joiner. If the judgment against J. O. Terry & Sons was also against J. O. Terry individually and is, said J. O. Terry owned the half interest in this south half of the Headright which he acquired jointly with Betsey Terry, this sale by the sheriff evidently transferred this half interest to Joiner in 1888. Joiner transferred this half interest in this south half of the Headright to Cornelius Stevens in 1902. At a tax sale under an assessment in the name of Thos. L. Terry for the year 1896, the sheriff, on May 29, 1897, sold to W. W. Brown "80 acres ½ interest in H. R. 38, T. 6 R. 8 E." On October 27, 1902, Brown sold to Cornelius Stevens 80 acres, being a portion of the undivided south half of H. R. 38, T. 6 S., R. 8 E. And on October 17, 1902, said Cornelius Stevens acquired from Sallie D. Martin, widow of Dr. J. Wesley Martin, 80 acres undivided half interest in H. R. 38, T. 6, R. 8, being land acquired by her from the succession of Thos. M. Terry. There is no deed in the record, however, to show how Thos. M. Terry or Mrs. Sallie D. Martin acquired any interest in the land.

As defendant claims this 80-acre tract through a title in W. L. Stevens running back to June 21, 1902, it follows that plaintiff must show a title in itself and its authors antedating that period. The titles from J. O. Terry & Sons to Joiner and from Joiner to Cornelius Stevens antedate the title under which defendant claims from W. L. Stevens. So does the tax title to W. W. Brown in 1897 covering 80 acres. It is true this title appears to convey only a half interest, but in the sale from Brown to Cornelius Stevens the vendor conveys 80 acres.

It also appears that all of the south half of this headright has been assessed to plaintiff and it has paid taxes on same since 1906. The defendant has paid taxes on the 80-acre tract since 1926. The plaintiff cut the timber on most of the 80-acre tract in 1912 and again in 1929 without protest from any one.

Plaintiff has made out a superior title to the property, both as to priority of title and priority of possession under its title.

For these reasons, the judgment appealed from is affirmed.