## In re PIERSON.

(Supreme Court, Appellate Division, First Department. November 10, 1899.)

MANDAMUS—TO CORPORATION.

Mandamus to compel a corporation to allow petitioner, a stockholder, to examine its books, to see if it is not selling gas at a loss, is properly denied, it being shown that it has cut the price of gas to meet competition, and thus retain its customers, and there being no advantage to the stockholders or the company in an application to the attorney general or for a receiver, which petitioner proposes to make if he finds that such sale is being made at a loss.

Appeal from special term, New York county.

Petition by J. Fred Pierson for mandamus to compel the New Amsterdam Gas Company to allow petitioner to inspect its books and records. From an order denying the writ (59 N. Y. Supp. 1003), petitioner appeals. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Treadwell Cleveland, for appellant.

John C. Tomlinson, for respondent.

O'BRIEN, J. The petitioner applied for a writ of peremptory mandamus to compel the New Amsterdam Gas Company to exhibit to him and his attorneys and accountants all books of accounts, records, and papers of said New Amsterdam Gas Company from "its organization until the time of said exhibition, and to permit them to fully examine the same, and take extracts therefrom." He shows that early in the year 1898 three gas companies were con-

solidated under the name of the New Amsterdam Gas Company; that on the consolidation of these companies the stock indebtedness was increased from $11,000,000 to $23,000,000, and the bond indebtedness from $9,000,000 to $20,000,000; that prior to the consolidation he owned 100 shares of the Equitable Gas Company, one of the companies consolidated, which at that time was worth $300 per share, and upon which he had been receiving dividends at the rate of 12 per cent. per annum for a number of years, and for each $100 of the Equitable Company stock he was given in exchange 75 per cent. in preferred stock and 150 per cent. in consolidated bonds in the New Amsterdam Company, as well as his quota of its common stock, and at the time of the application for the writ he had such bonds and preferred stock; that from its incorporation the New Amsterdam Gas Company had sold gas at the rate of $1.10 a thousand cubic feet, but, although he received no dividend on his stock, in April, 1899, the company reduced the price of its gas to 50 cents per thousand cubic feet, and thereafter paid, on July 1, 1899, the interest due on that date on its consolidated bonds; that the petitioner, having been informed that such interest was paid, not out of income, but out of capital, through his attorneys addressed a letter to the president of the company, stating that he was informed that at the price at which gas was being sold the company was not earning its fixed charges, and asking on his own behalf and on behalf of other owners of consolidated bonds and preferred and common stock of the company to be informed whether the interest thus paid on the bonds was in fact earned, or whether such interest was paid out of the proceeds of the property of the company; and, to ascertain the facts, he requested to be allowed to inspect the books of the company, and to take extracts therefrom. Besides the petition, a supplemental affidavit was made by the attorney for the petitioner, setting forth certain facts as to the issue of new bonds; and a further affidavit, showing that the preferred stock holdings of five of the directors who voted for the reduction in the price of gas was very small. An addition to the petition sets forth certain reasons why the writ is demanded, namely, that the petitioner desires to secure the inspection of the books in order to ascertain the financial condition of the company, and whether it is selling gas at a price below cost, and whether it is using capital, and not income, to pay fixed charges; and, "if it should appear that the directors of the said company have been, and are still, engaged in wasting the property of the company, to bring the facts of the case to the attention of the other stockholders of this company, and to lay the same before the attorney general of the state of New York, so that proper action may be taken to recover the property wasted by such directors, to prevent its further waste, to prevent the further incumbrance of your petitioner's property, and, if necessary, to have a receiver of said company appointed by the court." The answering affidavits deny all the allegations of the moving papers as to any acts of waste or wrongdoing on the part of the directors, and further show that the reduction in the price of gas was made in order to meet the rates

of other companies, and thus retain customers. The opposing papers also show that the petitioner has not been injured, but that his securities had a larger market value at the time of his application for the writ in 1899 than they had in 1898.

Without attempting to detail all the facts set forth in the petition, or the manner in which they are met in the opposing affidavits, it is sufficient to say that it is difficult to determine what useful purpose would be served by permitting an examination such as is here sought by the petitioner. That he was fully acquainted with the facts of the original consolidation, and accepted the change in securities, appears from the petition. Yet, without any expression of a desire to assail the consolidation, the figures of the bond indebtedness and stock of the original constituent companies and of the New Amsterdam Company are detailed at length, for the purpose, we may assume, of showing the amount of fixed charges and the amount of stock on which dividends, if earned, would be applicable. Though inclined to complain of the large increase in the obligations of three companies as they stood originally and after they were merged in the New Amsterdam Company, the petitioner recognizes the fact that the consolidation is a completed affair, accomplished by the voluntary act and consent of the security holders, including the petitioner; and the precise object of going over the details is not very apparent, unless, as stated, it be to show the amount of obligations which the new company has assumed. We take it that the petitioner's main grievance is the action of the directors in reducing the price of gas, and thus, as he claims, imperiling the financial standing of the company, and compelling it, as he is informed, to resort to its capital for the purpose of paying its fixed charges; and that it is to determine whether such is the fact that he desires an examination of the books and accounts of the company. That the reduction in the price of gas was a measure forced upon the company by a formidable rivalry and competition in business is shown by the opposing affidavits, and is not controverted; and that such action on the part of the company in order to retain its customers was necessary, and therefore a proper exercise of the power vested in its board of directors, is made to appear. Taking petitioner's statement that the present price of gas is less than the cost of production, it is obvious that the "gas war," if continued, may indefinitely postpone dividends. But in what way will the security holders or the company itself be benefited by the petitioner obtaining information that for the time being the company is compelled to do business at a loss, if such is the fact? The petitioner states that he would prevent such waste of the company's property by applying to the attorney general, or moving for a receiver to be appointed by the court. But that such a purpose, if carried out, would not tend to increase the value of the company's securities, is evident. That the company could have pursued any other course in attempting to retain its customers than to meet the cut in prices made by a rival company, the petitioner does not claim or show. An attack upon the company through the attorney

general would not aid the company, or advance its securities at a time when it is struggling with what the petitioner himself regards as a ruinous competition. An attack from within its lines would not help it to repel the attack from without. We have been unable to discover from these papers any proper or laudable motive which would justify granting to the petitioner the extraordinary remedy which he seeks by the peremptory writ of mandamus. The principles underlying the issuance of that writ have been so recently and clearly presented in Re Steinway, 159 N. Y. 250, 53 N. E. 1103, that it is unnecessary to repeat them. Suffice it to say that, while the court has the power, it is one to be exercised in its sound discretion, and the writ is not to be accorded to a stockholder whenever he seeks to invoke it. Had it been made to appear that the purpose sought by the examination was to promote the interests of the security holders or of the company, or that the value of the securities held by petitioner could be enhanced or protected by the relief sought, there might be a basis for the issuance of the writ. In the absence of such a showing, or where, as here, it appears that it would be injurious, rather than beneficial, not alone to the company, but to those in behalf of whom the petitioner states that he makes the application, we think the disposition made by the court below in denying the writ was proper, and that the order appealed from should be affirmed, with costs. All concur.