STATE EX REL. G. M. GUSTAFSON COMPANY v. CROOKSTON TRUST COMPANY AND OTHERS.[1]

May 10, 1946.

No. 34,177.

[1]Reported in 22 N. W. (2d) 911.

18

 

*Fowler, Youngquist, Furber, Taney & Johnson* and *Ralph H. Comaford,* for appellant (respondent below).

*Guesmer, Carson & MacGregor* and *L. S. Miller,* for respondent (relator below).

PETERSON, JUSTICE.

Plaintiff is the owner of about 18 percent of the stock of defendant trust company, which we were informed on the argument had become subsequent to decision below a national bank. By this proceeding in mandamus, plaintiff seeks to compel defendant to permit it as a stockholder to examine defendant's books and records for the purposes, as plaintiff alleges, "of ascertaining the true value of plaintiff's stock" and "of informing plaintiff as to the manner in which affairs of said trust company [defendant] have been and now are being conducted."

In its answer, defendant attempted to show by way of defense that the examination of its books and records was sought by plaintiff in bad faith and for wrongful purposes. Plaintiff demurred to the answer. The answer alleges in substance that plaintiff, its officers, and stockholders are "unfriendly" to defendant and its other stockholders; that they "have tried to obtain" control of defendant; that they have made statements to defendant's customers and prospective customers that they "will obtain" such control; that they have refused to do their "banking business" with defendant and have transacted it with its competitors; that they "have attempted and do attempt to disrupt the business" of defendant; that they have attempted to and do attempt "to prevent customers and prospective customers of this defendant from doing business" with defendant unless and until they gain control of defendant;

that they "have stated" that they would not consent to an extension of defendant's corporate life, although they knew at the time plaintiff purchased its stock that defendant's corporate life would expire about two and one-half years afterward; that they have attempted "otherwise" to "disrupt and disturb" the business of defendant; and that, "by reason of all thereof," defendant "believes and alleges" that plaintiff did not make the request for the examination "in good faith," and that it was made for the purpose of obtaining information to be used "to discourage" customers and prospective customers "from doing business" with defendant unless and until they obtain such control of defendant.

The demurrer to the answer was sustained. Defendant appeals.

Here, as below, the questions for decision are whether a stockholder of a trust company is entitled to an inspection of its books and records; and, if so, whether the answer sufficiently alleges as a defense that the inspection was not sought in good faith, but for wrongful purposes.

■ Defendant contends that stockholders of a trust company have no right to inspect its books and records, for the reasons that the relation between a bank or trust company and its customers is a confidential one, which would be violated by the disclosure incidental to an inspection, and that a legislative intent, reflecting the confidential nature of the relation, has been evinced that there shall be no right of inspection. Defendant makes no distinction between banks and trust companies, and its argument proceeds upon the assumption that the same rules in regard to right of inspection apply to both kinds of corporations.

The argument in support of the contention that the legislature has manifested such an intent is, in effect, that Minn. St. 1941, § 300.32 (Mason St. 1927, § 7470), relating to the inspection of books and records of corporations by their stockholders, as originally enacted, had no application to banks and trust companies and that it was carried forward into the present statute with its original meaning. It is pointed out that the statutes relating to banks are derived from G. S. 1866, c. 33, and that the inspection statute is

derived from *Id.* c. 34. Chapter 33 contained the statutes relative to banks. It contained no provision for the inspection of the books and records of banks by stockholders. It provided, however, for the disclosure of certain information concerning banks by requiring every bank to file with the state auditor an annual report showing its condition, and to keep a list of its stockholders and file a copy thereof with the register of deeds. (§ 21.) This section also provided that the individual liability of a stockholder for the bank's debts should continue for one year after any stock transfer by him. Chapter 34 contained the statutes relative to corporations organized for pecuniary profit. Title II thereof, although it did not provide in express terms that it related to "stock" corporations, did in fact relate to stock corporations not having the power of eminent domain. The inspection statute (§ 50), providing that books and records should be kept and that they should be open at all times to the inspection of any and all stockholders, was under Title II. Because c. 33 contained provisions relative to disclosure of information concerning banks by reports to the state auditor and the keeping and filing of lists of stockholders and none for a right of inspection by the stockholders of a bank, and because c. 34 contained a provision giving stockholders of other corporations organized for pecuniary profit there referred to a right to such inspection, it is contended that the inference is that it was the legislative intention to limit by c. 33 the disclosure of information concerning the business of banks, because of its confidential nature, to those instances specifically mentioned, viz., reports to the state auditor and the keeping and filing of lists of stockholders, and to deny all other disclosures, which by necessary implication excluded inspection of books and records by stockholders as involving the gaining of access to information intended to be withheld, and to confer by c. 34 the right of inspection upon stockholders of certain corporations organized for pecuniary profit, other than banks, therein mentioned.

Chapters 33 and 34 were carried forward without change into the several compilations subsequent to 1866 and prior to the Re-

vision of 1905, except that c. 33 was entirely rewritten and revised by L. 1895, c. 145, which, like c. 33, contained provisions relating to reports and the keeping and filing of lists of stockholders and for their liability, but none relating to inspection by stockholders. Meanwhile, L. 1883, c. 107, relating to trust companies was enacted. Like c. 33, it contained no provision relating to inspection by stockholders; but, by adoption of G. S. 1866, c. 34, Title I, § 8 (relating to corporations having power of eminent domain), it provided that the stock transfer book should be "subject to the inspection of any persons desiring the same." (§ 2.) In the 1905 Revision, G. S. 1866, cc. 33 and 34, L. 1883, c. 107, and L. 1895, c. 145, were expressly repealed. §§ 5518, 5535, and 5541. Some of the repealed statutes were reënacted, but in some instances they were changed. Statutes relating to banks and trust companies were put in c. 58 with those relating to other corporations and were there classified as financial and stock corporations. §§ 2847, 2983, and 3033. Provisions were made for public regulation and inspection of financial corporations and requiring them to keep and file lists of stockholders and to file reports. §§ 1580-1591, 2968, 2985, 2990, and 3046. The inspection statute (originally G. S. 1866, c. 34, Title II, § 50) was carried forward into R. L. 1905 as § 2869, but so changed as expressly to provide that the stockholders of all "stock" corporations should have a right to inspect their books and records and so as to limit the right to "all proper purposes." See, State ex rel. Humphrey v. Monida & Y. Stage Co. 110 Minn. 193, 124 N. W. 971, 125 N. W. 676, and State ex rel. Boldt v. St. Cloud Milk Producers' Assn. 200 Minn. 1, at p. 6, 273 N. W. 603, at p. 606. No change has been made in the statute since the 1905 Revision. See, Minn. St. 1941, § 300.32 (Mason St. 1927, § 7470).

The principles controlling decision here have been stated in State ex rel. Boldt v. St. Cloud Milk Producers' Assn. *supra,* and the authorities there cited. For present purposes, it will suffice merely to apply those principles to the instant case without again going over the ground there covered.

At common law, a stockholder or member of a corporation, as an incident of his stock ownership or membership, had the right at reasonable times and for proper purposes to inspect the corporation's books and records. No distinction was made between the various classes of corporations with respect to the right of inspection. While the corporation holds the legal title to its property, the stockholders are deemed the real and beneficial owners thereof and, as such, are entitled to information concerning the management of the property and business they have confided to the officers and directors of the corporation as their agents. A stockholder's assertion of right to inspect the corporation's books and records is sometimes said to be one merely for the inspection of what is his own. State ex rel. Boldt v. St. Cloud Milk Producers' Assn. *supra;* Guthrie v. Harkness, 199 U. S. 148, 26 S. Ct. 4, 50 L. ed. 130, 4 Ann. Cas. 433; Matter of Steinway, 159 N. Y. 250, 53 N. E. 1103, 45 L. R. A. 461; 6 Thompson, Corporations (3 ed.) § 4525. The rule giving a stockholder a right of inspection is regarded as a salutary one. State ex rel. Bergenthal v. Bergenthal, 72 Wis. 314, 39 N. W. 566. The common-law rule that stockholders of a corporation have a right to inspect its books and records applies with full force to stockholders of banks. Guthrie v. Harkness, *supra* (national bank); Wilson v. Mackinaw State Bank, 217 Ill. App. 494 (state bank); 9 C. J. S., Banks and Banking, § 69; 7 Am. Jur., Banks, § 153.[2] Authorities holding that a stockholder of a bank has such a right of inspection were cited and approved by us in State ex rel. Boldt v. St. Cloud Milk Producers' Assn. *supra,* in support of the rule that a stockholder or member of a corporation has the right

[2]In accord: Davis Trust Co. v. Hardee, 66 App. D. C. 168, 85 F. (2d) 571, 107 A. L. R. 1425; Winter v. Baldwin, 89 Ala. 483, 7 So. 734; Becker v. LeMars Loan & Trust Co. 217 Iowa 17, 250 N. W. 644; Robertson v. Owensboro Sav. B. & T. Co. 150 Ky. 50, 149 S. W. 1144; Cockburn v. Union Bank, 13 La. Ann. 289; State ex rel. Burke v. Citizens' Bank, 51 La. Ann. 426, 25 So. 318; Woodworth v. Old Second Nat. Bank, 154 Mich. 459, 117 N. W. 893, 118 N. W. 581; Brown v. Central Home Trust Co. 129 N. J. L. 213, 28 A. (2d) 773; Matter of Tuttle v. Iron Nat. Bank, 170 N. Y. 9, 62 N. E. 761; State ex rel. Heitman v. First Bank, 125 Wash. 321, 216 P. 9.

to inspect its books and records. Perhaps the leading case is Guthrie v. Harkness, *supra,* where the authorities were considered in an exhaustive opinion by Mr. Justice Day and the conclusion reached that a stockholder of a national bank has a right to inspect its books and records. That case considered and decided most of the questions involved here. The decision in the Harkness case is persuasive here, not only because of the soundness of the reasoning upon which it rests, but also because, if we treat defendant as a state bank, which it was at the time of trial and decision below, we should endeavor to keep our decisions with respect to state banks in harmony with those of the United States Supreme Court with respect to national banks (1 Dunnell, Dig. & Supp. § 763a), and because, if we treat defendant as a national bank, which it became after decision below, we ought to follow that court as the ultimate authority with respect to such questions.

The fact that a bank and its customers occupy a relationship of trust and confidence is no reason for denying the stockholders' right of inspection. Guthrie v. Harkness, *supra;* State ex rel. Doyle v. Laughlin, 53 Mo. App. 542. A bank or banker is not privileged from disclosing the facts concerning a depositor's or customer's business with the bank. Baker v. State, 183 Ind. 1, 108 N. E. 7, L. R. A. 1915D, 1061; Annotations, L. R. A. 1915D, 1061, and Ann. Cas. 1916C, 703. In this state the rule could not be otherwise, for the reason that § 595.02 (§ 9814) prescribes the public policy with respect to the matter by providing that, except as expressly provided to the contrary, all persons are competent to testify as witnesses. Only persons standing in certain specified relationships, in which that of banker and customer is not included, are privileged from testifying. In England, the relation of banker and customer is held to be a confidential one giving rise to a *contractual* right, implied from the confidential nature of the relationship, of nondisclosure to *third persons*—that is, to outsiders—without the customer's consent of information concerning his transactions with the bank. Tournier v. National Provincial and Union Bank [1924] 1 K. B. 461, 12 B. R. C. 1021 The rule plainly has no application

where, as here, any disclosure would be to those having a voice in the operation of the bank and for that reason entitled to the information. A bank's contract with a customer not to disclose information concerning his transactions with it cannot override the rule of law giving stockholders of the bank a right to inspect its books and records. In Guthrie v. Harkness, *supra*, it was pointed out that, while the right of inspection might be abused by disclosing confidential information, that fact in itself is no ground for denying the right.

It is further urged that an inspection by plaintiff would disclose to it information concerning defendant's business in violation of defendant's duty as agent and trustee. While the bank may act as agent or trustee for others and for that reason be bound not to disclose information concerning its customers' accounts to third persons, that is no reason for denying a stockholder of the bank a right of inspection. Guthrie v. Harkness, *supra*. In the cited case, after pointing out that the confidential nature of the relation of bank and customer was no objection to an inspection by a stockholder, the court said (199 U. S. 155, 26 S. Ct. 6, 50 L. ed. 132, 4 Ann. Cas. 435):

"The right of inspection rests upon the proposition that those in charge of the corporation are merely the agents of the stockholders who are the real owners of the property."

In effect, any disclosure would be by corporate officers and directors as agents to the stockholders as their principals, who, as such, have a right to be informed. If the officers and directors should be regarded as trustees, the result would not be different. Babcock v. Harrsch, 310 Ill. 413, 141 N. E. 701.

The argument as to legislative intent assumes as a premise the fundamental error that a stockholder's right to an inspection is purely statutory. It is not. The common law, in the absence of statute, provides for the right. Hence, the right may be entirely independent of statute. The right is a remedial one. Statutes relating to a stockholder's right of inspection change the common law only to the extent that they so provide. Where there is no provi-

sion for a repeal of the common-law rule or a statutory declaration that the statutory rule shall be exclusive, common-law rules remain in effect. Statutes providing for a right of inspection, except as they change the common-law rule, "are universally held not to abridge, restrict, or repeal, but to enlarge, extend, and supplement, the common-law rule." State ex rel. Boldt v. St. Cloud Milk Producers' Assn. 200 Minn. at p. 6, 273 N. W. at p. 606. In the cited case, we held that, even though our inspection statute by its terms applied only to *stock* corporations, a member of a *nonstock* corporation had a right of inspection under the common law, since the statute neither modified nor repealed that right. Matter of Steinway, 159 N. Y. 250, 53 N. E. 1103, 45 L. R. A. 461; see, Annotations, 22 A. L. R. 24, 43 A. L. R. 783, 59 A. L. R. 1373, 80 A. L. R. 1502. Hence, for present purposes, it makes no difference whether the inspection statute, either in its original or amended form, applied to banks. If it did not, the common law prevails so as to give the stockholder a right of inspection. If the statute applies to banks in virtue of the change made in the 1905 Revision giving the stockholders of all *stock corporations* a right of inspection (a question we need not decide now), the right of plaintiff to an inspection would be a statutory rather than a common-law one. In any event, it would be entitled to an inspection.

We think, also, that the provisions for keeping and filing lists of stockholders, for making reports to the commissioner of banks, and for supervision and examination of such corporations by him do not in any manner affect the right of stockholders to inspection. In State ex rel. Boldt v. St. Cloud Milk Producers' Assn. 200 Minn. at p. 9, 273 N. W. at p. 608, we held that members of a coöperative association should not be denied the right to inspect its books and records because it was required to make and file annual reports with a public official. We there said:

"* * * Such reports are not a substitute for inspection of books, records, and papers. The fact that a corporation is required to file reports or is subject to the visitorial powers of government is no

reason for denying the right of inspection of corporate books to one who is entitled thereto."

We there cited authorities holding that statutory provisions requiring banks to file reports with a public official and subjecting the business of banking to public supervision were not intended to affect or to be a substitute for the right of stockholders of banks to inspect their books and records. The same is true also of reports to and examinations by the Federal Deposit Insurance Corporation under 12 USCA, § 264(k)(2), to which defendant apparently is subject. The purpose of the provisions relative to keeping and filing lists of stockholders is to furnish information to public officials for purposes of taxing banks, to creditors for purposes of enforcing stockholders' liability for the banks' debts, and to stockholders to advise them as to the names of other stockholders for purposes of voting and perhaps for other purposes. Guthrie v. Harkness, *supra;* Matter of Steinway, *supra* (159 N. Y. 264, 53 N. E. 1107, 45 L. R. A. 475).

As holding contra, defendant relies on State ex rel. Contonio v. Italo-American Homestead Assn. 177 La. 766, 149 So. 449; Ulmer v. Falmouth Loan & Bldg. Assn. 93 Me. 302, 45 A. 32; and State ex rel. Powell v. State Bank, 90 Mont. 539, 4 P. (2d) 717, 80 A. L. R. 1494. The first two cited cases were decided under statutes which as there construed vested in an official corresponding to our commissioner of banks exclusive authority to investigate the affairs of building and loan associations. Suffice it to say that our statute does not so provide. In Louisiana, stockholders of banks, to which the statute does not apply, have a right of inspection. Cockburn v. Union Bank, 13 La. Ann. 289, and other cases cited *supra.* The Montana statute, as the opinion in the cited case shows, limits the right of stockholders of a bank to inspect its books and records to other than those which show its transactions with its customers. We have no such statute. We do not regard any of the cited cases as in point. That is sufficient reason for declining to follow them.

Our conclusion is that stockholders of banks and trust companies have a right to inspect their books and records the same as do stockholders of other corporations.

■ The answer attempted to plead as defenses that plaintiff sought the inspection for the purpose of injuring defendant and not in good faith. Under common-law rules and also under our inspection statute limiting the right of inspection to cases where it is sought for proper purposes, a stockholder's right of inspection is limited to cases where the inspection is sought in good faith for some purpose germane to his interest as a stockholder. When it is said that the inspection must be sought in good faith in this connection, it is not meant that the stockholder's motives are a test of his right to an inspection, except as they manifest a purpose to exercise the right to an inspection not for some purpose germane to his rights as a stockholder, but for some extraneous one. Where the purpose of the inspection is to cause injury to the corporation, an inspection will be denied. State ex rel. Boldt v. St. Cloud Milk Producers' Assn. *supra.*

The purposes alleged in the alternative writ of mandamus are germane to plaintiff's interests as a stockholder. The authorities uniformly hold that an inspection to determine how the affairs of a corporation are being conducted and the value of a stockholder's stock is for a proper purpose. Guthrie v. Harkness, *supra;* State ex rel. McClure v. Malleable Iron Range Co. 177 Wis. 582, 187 N. W. 646, 22 A. L. R. 5; Otis-Hidden Co. v. Scheirich, 187 Ky. 423, 219 S. W. 191, 22 A. L. R. 19; McClintock v. Young Republicans of Philadelphia, 210 Pa. 115, 59 A. 691, 68 L. R. A. 459, 105 A. S. R. 784; 13 Am. Jur., Corporations, § 443, notes 16 and 1. Where the alternative writ on its face shows that the inspection is sought for proper purposes, a peremptory writ should be granted unless the defendant (or respondent) alleges and shows as a defense that the inspection is not sought for such purposes. The burden of establishing an improper purpose is on the defendant. State ex rel. Boldt v. St. Cloud Milk Producers' Assn. *supra.* Hence, if the answer failed to allege facts showing that the inspection was

sought for improper purposes, the demurrer was properly sustained. The allegations in question have already been set forth.

For the purpose of determining the sufficiency of the facts alleged in the pleading to which a demurrer is interposed, the demurrer admits all facts well pleaded, but not those not well pleaded or conclusions of law. A pleading is insufficient if it consists of allegations of fact not well pleaded or conclusions of law, or both. The answer attempted to allege future intended harm as a prediction or inference based on past and present instances of such harm. In our opinion, the allegations of the answer relative to future as well as past and present conduct on the part of plaintiff, its officers, and stockholders are of two kinds: (1) Those relating to acts in themselves proper, and (2) those consisting of mere conclusions. That being true, the answer is insufficient and demurrable.

We turn now to the particular allegations. The allegation that plaintiff, its officers, and stockholders are *unfriendly* to defendant states a fact insufficient as a defense. In State ex rel. Boldt v. St. Cloud Milk Producers' Assn. *supra,* we held that *hostility* of the stockholder toward the corporation was no ground for denying an inspection. See, Annotation, 22 A. L. R. 75. "Too, the fact that a stockholder is *unfriendly* toward the officers of the company does not justify a denial of his right to examine its books." (Italics supplied.) 13 Am. Jur., Corporations, § 432, note 18. There is nothing unlawful about attempting to gain control of a corporation by lawful means. Here, no unlawful or wrongful means are alleged. A stockholder has the right as against the corporation and other stockholders to gain control of the corporation by lawful means such as by stock purchases and stock control. Mairs v. Madden, 307 Mass. 378, 30 N. E. (2d) 242, 132 A. L. R. 256; Planters' Hotel, Inc. v. Stewart, 145 La. 370, 82 So. 374. Mandamus will be granted to compel an inspection to enable a stockholder to communicate with other stockholders for those purposes. Lawshe v. Royal Baking Powder Co. 54 Misc. 220, 104 N. Y. S. 361; Drovin v. Lehigh Coal & Navigation Co. 265 Pa. 447, 109 A. 128; 6 Thompson, Corporations (3 ed.) § 4526, note 33; 2 Cook, Corporations (8 ed.)

§ 515; Annotation, 22 A. L. R. 78. We need not consume space demonstrating that the refusal of plaintiff to transact its banking business with defendant does not show anything improper, because a stockholder of a bank is in no way obligated to become its customer. The most that can be said of the fact is that under certain circumstances it may reflect the stockholder's unfriendliness, and what we have said concerning that matter applies to plaintiff's failure to do its banking business with defendant. Refusal of plaintiff to consent to a renewal of defendant's corporate life was but the exercise of a statutory right and therefore not improper. Section 300.13 (Mason St. 1940 Supp. § 7455) provides that the existence of a corporation may be renewed only by vote of its stockholders. The statute authorizing the renewal of a corporation creates no contract or vested rights to a renewal either as between the state and the corporation or as among the stockholders. See, Wm. Warnock Co. Inc. v. H. D. Hudson Mfg. Co. 200 Minn. 196, 273 N. W. 710. There is no presumption that the stockholders will avail themselves of the privilege of renewing its corporate life. Newhall v. Journal Printing Co. 105 Minn. 44, 117 N. W. 228, 20 L.R.A.(N.S.) 899. There is no allegation that defendant's stockholders, other than plaintiff, had agreed to a renewal of its corporate life or that plaintiff's refusal prevented them from renewing it, if they so desired. Hence, the refusal showed no improper purpose and no wrong to defendant or its other stockholders.

We think the other allegations are mere conclusions and as such should be rejected. A pleading should state facts, not conclusions of law. While the rule is simple, its application is difficult. A rule should be avoided that would result in undue prolixity because of allegations of evidentiary facts. It is essential that the facts should be stated in order that the pleader's adversary may be apprised as to the facts upon which the cause of action or defense is based and be enabled to prepare for trial. While allegations amounting to mixed statements of law and fact are permissible, an allegation of that sort will not be sustained where the fact element is so lacking that it cannot be determined therefrom

upon what facts the cause of action or defense is based. In St. Paul Book & Stationery Co. v. St. Paul Gaslight Co. 130 Minn. 71, 74, 153 N. W. 262, 264, Ann. Cas. 1916B, 286, L. R. A. 1918A, 384, a complaint based upon general allegations of *unlawful discrimination* was held demurrable. We said: "Facts showing discrimination must be pleaded." In Brown v. Alabama G. S. R. R. Co. 191 Ala. 500, 67 So. 702, an allegation that defendant contributed to the obstruction of a culvert was held to be a mere conclusion. In Merchants Exchange of St. Louis v. Knott, 212 Mo. 616, 618, 111 S. W. 565, 573, an allegation that plaintiff's business was about to be struck down and ruined by the enforcement of an unconstitutional statute was saved against the objection only by allegations showing "in ways pointed out" how that result would occur. See, Rand v. Board of Co. Commrs. 50 Minn. 391, 52 N. W. 901 (allegation that plaintiff was compelled to pay a judgment held to be a conclusion), and G. C. & S. F. Ry. Co. v. Cities Service Co. (D. C.) 273 F. 946 (allegation that the party was caused, required, procured, influenced, persuaded, induced, and compelled to break a contract held a conclusion). Here, the allegations relating to plaintiff's disturbing and disrupting defendant's business and discouraging its customers from doing business with it are no different in principle. A business is not disrupted or disturbed and customers are not discouraged from doing business except by doing acts to bring about such a result. Those facts are not alleged in the answer here. There is no way of telling on what facts defendant intends to base its defense. For that reason the allegations are mere conclusions of law. The same is true of the allegation that plaintiff did not seek the inspection in good faith. An allegation that an act is done in good faith or bad faith is a mere conclusion. Downer v. Read, 17 Minn. 470 (493); State v. Rathbone, 144 La. 835, 81 So. 334; 49 C. J., Pleading, § 64.

In short, the answer contains allegations which either do not constitute defensive matter or which are mere conclusions of law. Since the demurrer admits the truth only of facts well pleaded and the answer does not allege any fact sufficient to constitute a

defense, the answer is demurrable. St. Paul Book & Stationery Co. v. St. Paul Gaslight Co. *supra.*

Affirmed.

MR. CHIEF JUSTICE LORING took no part in the consideration or decision of this case.

