# STATE EX REL. CHARLES A. PILLSBURY v. HONEYWELL, INC.

191 N. W. (2d) 406.

October 22, 1971—No. 42541.

*John Remington Graham,* for appellant.

*Dorsey, Marquart, Windhorst, West & Halladay, Henry Halladay, Bernard G. Heinzen, Robert A. Heiberg,* and *Sigurd Ueland, Jr.,* for respondent.

KELLY, JUSTICE.

Petitioner appeals from an order and judgment of the district court denying all relief prayed for in a petition for writ of mandamus to compel respondent, Honeywell, Inc., (Honeywell) to produce its original shareholder ledger, current shareholder ledger, and all corporate records dealing with weapons and munitions manufacture. We must affirm.

The issues raised by petitioner are as follows: (1) Whether Minnesota or Delaware law determines the right of a shareholder to inspect respondent's corporate books and records; (2) whether petitioner, who bought shares in respondent corporation for the purpose of changing its policy of manufacturing war munitions, had a proper purpose germane to a shareholder's interest; (3) whether the respondent in a mandamus action may answer before the issuance of an alternative writ; (4) whether a deposi-

tion may be considered by the trial court after the filing of a petition for an alternative writ of mandamus and an answer to the petition; and (5) whether petitioner was improperly denied a jury trial where the trial court found all questions of fact answered by the pleadings and petitioner's deposition.

Petitioner attended a meeting on July 3, 1969, of a group involved in what was known as the "Honeywell Project." Participants in the project believed that American involvement in Vietnam was wrong, that a substantial portion of Honeywell's production consisted of munitions used in that war, and that Honeywell should stop this production of munitions. Petitioner had long opposed the Vietnam war, but it was at the July 3rd meeting that he first learned of Honeywell's involvement. He was shocked at the knowledge that Honeywell had a large government contract to produce anti-personnel fragmentation bombs. Upset because of knowledge that such bombs were produced in his own community by a company which he had known and respected, petitioner determined to stop Honeywell's munitions production.

On July 14, 1969, petitioner ordered his fiscal agent to purchase 100 shares of Honeywell. He admits that the sole purpose of the purchase was to give himself a voice in Honeywell's affairs so he could persuade Honeywell to cease producing munitions. Apparently not aware of that purpose, petitioner's agent registered the stock in the name of a Pillsbury family nominee —Quad & Co. Upon discovering the nature of the registration, petitioner bought one share of Honeywell in his own name on August 11, 1969. In his deposition testimony petitioner made clear the reason for his purchase of Honeywell's shares:

"Q. * * * [D]o I understand that you requested Mr. Lacey to buy these 100 shares of Honeywell in order to follow up on the desire you had to bring to Honeywell management and to stockholders these theses that you have told us about here today?

"A. Yes. That was my motivation."

The "theses" referred to are petitioner's beliefs concerning the propriety of producing munitions for the Vietnam war.

During July 1969, *subsequent* to the July 3, 1969, meeting and after he had ordered his agent to purchase the 100 shares of Honeywell stock, petitioner inquired into a trust which had been formed for his benefit by his grandmother. The purpose of the inquiry was to discover whether shares of Honeywell were included in the trust. It was then, *for the first time,* that petitioner discovered that he had a contingent beneficial interest under the terms of the trust in 242 shares of Honeywell.

Prior to the instigation of this suit, petitioner submitted two formal demands to Honeywell requesting that it produce its original shareholder ledger, current shareholder ledger, and all corporate records dealing with weapons and munitions manufacture. Honeywell refused.

On November 24, 1969, a petition was filed for writs of mandamus ordering Honeywell to produce the above mentioned records. In response, Honeywell answered the petition and served a notice of deposition on petitioner, who moved that the answer be stricken as procedurally premature and that an order be issued to limit the deposition. After a hearing, the trial court denied the motion, and the deposition was taken on December 15, 1969.

In the deposition petitioner outlined his beliefs concerning the Vietnam war and his purpose for his involvement with Honeywell. He expressed his desire to communicate with other shareholders in the hope of altering Honeywell's board of directors and thereby changing its policy. To this end, he testified, business records are necessary to insure accuracy.

A hearing was held on January 8, 1970, during which Honeywell introduced the deposition, conceded all material facts stated therein, and argued that petitioner was not entitled to any relief as a matter of law. Petitioner asked that alternative writs of mandamus issue for all the relief requested in his petition. On April 8, 1970, the trial court dismissed the petition, holding that

the relief requested was for an improper and indefinite purpose. Petitioner contends in this appeal that the dismissal was in error.

■ Honeywell is a Delaware corporation doing business in Minnesota. Both petitioner and Honeywell spent considerable effort in arguing whether Delaware or Minnesota law applies. The trial court, applying Delaware law, determined that the outcome of the case rested upon whether or not petitioner has a proper purpose germane to his interest as a shareholder. Del. Code Ann. tit. 8, § 220 (Supp. 1968). This test is derived from the common law and is applicable in Minnesota. See, Sanders v. Pacific Gamble Robinson Co. 250 Minn. 265, 84 N. W. 2d 919 (1957).[1] Minn. St. c. 300, upon which petitioner relies, applies only to firms incorporated under that chapter. We need not rule on whether the lower court applied the right state law since the test used was correct.

Under the Delaware statute the shareholder must prove a proper purpose to inspect corporate records other than shareholder lists. Del. Code Ann. tit. 8, § 220(c) (Supp. 1968). This facet of the law did not affect the trial court's findings of fact. The case was decided solely on the pleadings and the deposition of petitioner, the court determining from them that petitioner was not entitled to relief as a matter of law. Thus, problems of burden of proof did not confront the trial court and this issue was not even raised in this court.

■ The trial court ordered judgment for Honeywell, ruling that petitioner had not demonstrated a proper purpose germane to his interest as a stockholder. Petitioner contends that a stockholder who disagrees with management has an absolute right to inspect corporate records for purposes of soliciting proxies. He would have this court rule that such solicitation is per se a "proper purpose." Honeywell argues that a "proper purpose"

---

[1] In Sanders v. Pacific Gamble Robinson Co. 250 Minn. 265, 84 N. W. 2d 919 (1957), the court referred to Minn. St. 300.32 but did not apply it since the corporation was foreign.

contemplates concern with investment return. We agree with Honeywell.

This court has had several occasions to rule on the propriety of shareholders' demands for inspection of corporate books and records. Minn. St. 300.32, not applicable here, has been held to be declaratory of the common-law principle that a stockholder is entitled to inspection for a proper purpose germane to his business interests. While inspection will not be permitted for purposes of curiosity, speculation, or vexation, adverseness to management and a desire to gain control of the corporation for economic benefit does not indicate an improper purpose.[2]

Several courts agree with petitioner's contention that a mere desire to communicate with other shareholders is, per se, a proper purpose. Lake v. The Buckeye Steel Castings Co. 2 Ohio St. 2d 101, 206 N. E. 2d 566 (1965). This would seem to confer an almost absolute right to inspection. We believe that a better rule would allow inspections only if the shareholder has a proper purpose for such communication. This rule was applied in McMahon v. Dispatch Printing Co. 101 N. J. L. 470, 129 A. 425 (1925), where inspection was denied because the shareholder's objective was to discredit politically the president of the company, who was also the New Jersey secretary of state.

The act of inspecting a corporation's shareholder ledger and business records must be viewed in its proper perspective. In terms of the corporate norm, inspection is merely the act of the concerned owner checking on what is in part his property. In the context of the large firm, inspection can be more akin to a weapon in corporate warfare. The effectiveness of the weapon is considerable:

---

[2] Nationwide Corp. v. Northwestern Nat. Life Ins. Co. 251 Minn. 255, 87 N. W. 2d 671 (1958); Sanders v. Pacific Gamble Robinson Co. *supra;* State ex rel. G. M. Gustafson Co. v. Crookston Trust Co. 222 Minn. 17, 22 N. W. 2d 911 (1946); State ex rel. Boldt v. St. Cloud Milk Producers' Assn. 200 Minn. 1, 273 N. W. 603 (1937); State ex rel. Humphrey v. Monida & Yellowstone Stage Co. 110 Minn. 193, 124 N. W. 971 (1910). See, Annotation, 15 A. L. R. 2d 11.

"Considering the huge size of many modern corporations and the necessarily complicated nature of their bookkeeping, it is plain that to permit their thousands of stockholders to roam at will through their records would render impossible not only any attempt to keep their records efficiently, but the proper carrying on of their businesses." Cooke v. Outland, 265 N. C. 601, 611, 144 S. E. 2d 835, 842 (1965).

See, also, Matter of Pierson, 28 Misc. 726, 59 N. Y. S. 1003 (Sup. Ct. 1899), affirmed, 44 App. Div. 215, 60 N. Y. S. 671 (1899). Because the power to inspect may be the power to destroy, it is important that only those with a bona fide interest in the corporation enjoy that power.

That one must have proper standing to demand inspection has been recognized by statutes in several jurisdictions.[3] Courts have also balked at compelling inspection by a shareholder holding an insignificant amount of stock in the corporation.[4]

Petitioner's standing as a shareholder is quite tenuous. He only owns one share in his own name, bought for the purposes of this suit. He had previously ordered his agent to buy 100 shares, but there is no showing of investment intent. While his agent had a cash balance in the $400,000 portfolio, petitioner made no attempt to determine whether Honeywell was a good investment or whether more profitable shares would have to be sold to finance the Honeywell purchase. Furthermore, petitioner's agent had the power to sell the Honeywell shares without his consent. Petitioner also had a contingent beneficial interest

---

[3] See, e. g., Ark. Stat. Ann. § 64.312 (1947); D. C. Code Ann. § 29-920 (1967); Fla. Stat. § 608.39 (1969); Ill. Rev. Stat. c. 32, § 157.45 (1967); La. Rev. Stat. § 12:103 (Supp. 1970); Maine Rev. Stat. Ann. tit. 13, § 373 (1964); Mich. Comp. Laws Ann. § 450.45 (1967); Nev. Rev. Stat. § 78:105 (1970); N. J. Stat. Ann. § 14A:5-28 (1969); N. Y. Bus. Corp. Law, § 624 (McKinney 1963); Model Bus. Corp. Act Ann. § 52 (1971).

[4] See, People ex rel. Hunter v. National Park Bank of New York, 122 App. Div. 635, 107 N. Y. S. 369 (1907); Matter of Pierson, 28 Misc. 726, 59 N. Y. S. 1003 (Sup. Ct. 1899), affirmed, 44 App. Div. 215, 60 N. Y. S. 671 (1899).

in 242 shares. Courts are split on the question of whether an equitable interest entitles one to inspection. See 5 Fletcher, Private Corporations, § 2230 at 862 (Perm. ed. rev. vol. 1967). Indicative of petitioner's concern regarding his equitable holdings is the fact that he was unaware of them until he had decided to bring this suit.

Petitioner had utterly no interest in the affairs of Honeywell before he learned of Honeywell's production of fragmentation bombs. Immediately after obtaining this knowledge, he purchased stock in Honeywell for the sole purpose of asserting ownership privileges in an effort to force Honeywell to cease such production. We agree with the court in Chas. A. Day & Co. v. Booth, 123 Maine 443, 447, 123 A. 557, 558 (1924) that "where it is shown that such stockholding is only colorable, or solely for the purpose of maintaining proceedings of this kind, [we] fail to see how the petitioner can be said to be a person interested, entitled as of right to inspect * * *." But for his opposition to Honeywell's policy, petitioner probably would not have bought Honeywell stock, would not be interested in Honeywell's profits and would not desire to communicate with Honeywell's shareholders. His avowed purpose in buying Honeywell stock was to place himself in a position to try to impress his opinions favoring a reordering of priorities upon Honeywell management and its other shareholders. Such a motivation can hardly be deemed a proper purpose germane to his economic interest as a shareholder.[5]

---

[5] We do not question petitioner's good faith incident to his political and social philosophy; nor did the trial court. In a well-prepared memorandum, the lower court stated: "By enumerating the foregoing this Court does not mean to belittle or to be derisive of Petitioner's motivations and intentions because this Court cannot but draw the conclusion that the Petitioner is sincere in his political and social philosophy, but this Court does not feel that this is a proper forum for the advancement of these political-social views by way of direct contact with the stockholders of Honeywell Company or any other company. If the courts were to grant these rights on the basis of the foregoing, anyone who

■ The fact that petitioner alleged a proper purpose in his petition will not necessarily compel a right to inspection. "A mere statement in a petition alleging a proper purpose is not sufficient. The facts in each case may be examined." Sawers v. American Phenolic Corp. 404 Ill. 440, 449, 89 N. E. 2d 374, 379 (1949). Neither is inspection mandated by the recitation of proper purpose in petitioner's testimony. Conversely, a company cannot defeat inspection by merely alleging an improper purpose.[6] From the deposition, the trial court concluded that petitioner had already formed strong opinions on the immorality and the social and economic wastefulness of war long before he bought stock in Honeywell. His sole motivation was to change Honeywell's course of business because that course was incompatible with his political views. If unsuccessful, petitioner indicated that he would sell the Honeywell stock.

We do not mean to imply that a shareholder with a bona fide investment interest could not bring this suit if motivated by concern with the long- or short-term economic effects on Honeywell resulting from the production of war munitions. Similarly, this suit might be appropriate when a shareholder has a bona fide concern about the adverse effects of abstention from profitable war contracts on his investment in Honeywell.

In the instant case, however, the trial court, in effect, has found from all the facts that petitioner was not interested in even the long-term well-being of Honeywell or the enhancement of the value of his shares. His sole purpose was to persuade the company to adopt his social and political concerns, irrespective of any economic benefit to himself or Honeywell. This purpose

---

has a political-social philosophy which differs with that of a company in which he becomes a shareholder can secure a writ and any company can be faced with a rash and multitude of these types of actions which are not bona fide efforts to engage in a proxy fight for the purpose of taking over the company or electing directors, which the courts have recognized as being perfectly legitimate and acceptable."

[6] See, Nationwide Corp. v. Northwestern Nat. Life Ins. Co. 251 Minn 255, 87 N. W. 2d 671 (1958).

on the part of one buying into the corporation does not entitle the petitioner to inspect Honeywell's books and records.[7]

■ Petitioner argues that he wishes to inspect the stockholder ledger in order that he may correspond with other shareholders with the hope of electing to the board one or more directors who represent his particular viewpoint. On p. 30 of his brief he states that this purpose alone compels inspection:

"* * * [T]his Court has said that a stockholder's motives or 'good faith' are not a test of his right of inspection, except as 'bad faith' actually manifests some recognized 'improper purpose'—such as vexation of the corporation, or purely destructive plans, or *nothing specific*, just pure idle curiosity, or necessarily illegal ends, or *nothing germane to his interests*. State ex rel. Gustafson Co. v. Crookston Trust Co. [222 Minn. 17, 22 N. W. 2d 911 (1946)] * * *." (Italics supplied.)

While a plan to elect one or more directors is specific and the election of directors normally would be a proper purpose, here

---

[7] Petitioner cites Medical Committee for Human Rights v. S. E. C. 139 App. D. C. 226, 432 F. 2d 659 (1970), for the proposition that economic benefit and community service may, in the motives of a shareholder, blend together. We have ruled that petitioner does not meet this test because he had no investment motivation for his inspection demands. The Medical Committee case did not reach the merits, the court ruling only that S. E. C. actions concerning the inclusion of proxy statements are reviewable. It is interesting to note, however, that the case presents an analagous factual situation. Shareholders sought to solicit proxies to stop the Dow Chemical Company's manufacture of napalm on grounds that management had "decided to pursue a course of activity which generated little profit * * * and actively impaired the company's public relations and recruitment activities because *management considered this action morally and politically desirable.*" 139 App. D. C. 249, 432 F. 2d 681. (Italics supplied.) The court, in dictum, expressed its disapproval of Dow's claim that it could use its power to impose management's personal political and moral prejudices. It would be even more anomalous if an outsider with no economic concern for the corporation could attempt to adapt Honeywell's policies to his own social convictions.

the purpose was not germane to petitioner's or Honeywell's economic interest. Instead, the plan was designed to further petitioner's political and social beliefs. Since the requisite propriety of purpose germane to his or Honeywell's economic interest is not present, the allegation that petitioner seeks to elect a new board of directors is insufficient to compel inspection.

■ Petitioner contends that the trial court should have struck Honeywell's answer to the petition for the writs of mandamus since Honeywell answered before the writ was issued. According to statutory procedure, an answer is proper after the alternative writ has issued. Minn. St. 586.06. While it is clear that Honeywell did not comply with the strict dictates of the statute, the question is whether such error is cause for reversal. We do not believe so.

If the trial court had struck Honeywell's answer and issued the alternative writ, Honeywell would have answered with the same allegations as in its original answer. On the merits, the issues would have been identical and would have created the same burdens of proof. Thus, the technical error did not affect the ruling upon the merits and is thus not reversible.

■ We have stated that it was not reversible error to allow Honeywell's premature answer. It follows that the notice to take his deposition, served upon petitioner the same day as the answer, was served subsequent to the commencement of the action. See, Rules of Civil Procedure, Rule 3.01.

■ Petitioner's final contention is that he was improperly denied a jury trial. The court below denied the petition for a writ after a hearing at which Honeywell appeared in opposition. In denying the petition, the court found that the facts were undisputed and that they did not necessitate a jury trial. We agree that the facts are undisputed and are susceptible to only one inference on the crucial issue in this case, namely, whether petitioner had a proper purpose germane to his economic interest as

a shareholder.[8] We have affirmed the trial court's ruling that the facts as stated by petitioner in the deposition are sufficient to deny him all grounds of relief. Thus, there was no issue to try before a jury.[9] The fact that Honeywell raised issues of fact in its answer is immaterial. Inconsistent defenses are always permitted. Rules of Civil Procedure, Rule 8.05(2). No constitutional or statutory right to a jury trial exists where there is no issue of fact. Rheinberger v. The First Nat. Bank, 276 Minn. 194, 150 N. W. 2d 37 (1967).

The order of the trial court denying the writ of mandamus is affirmed.

---

[8] This court has pointed out in other cases, involving negligence, that where the facts are undisputed and susceptible of only one inference, there is no fact issue for a jury. Jorgensen v. Hawton, 281 Minn. 370, 375, 161 N. W. 2d 676, 680 (1968).

[9] See, Thomsen v. State, by Head, 284 Minn. 468, 170 N. W. 2d 575 (1969), where plaintiff landowner brought a mandamus action in district court to compel the state to condemn his property. We held that the mandamus court should determine whether or not there was a taking that would require an order to the state to initiate condemnation proceedings. This court stated (284 Minn. 475, 170 N. W. 2d 580): "Plaintiff argues that this procedure deprives him of his right to a jury trial. However, in an action in the nature of mandamus, such as this one, where the facts are substantially undisputed, there is no reason to impanel a jury. State ex rel. Landon v. Anding, 132 Minn. 36, 155 N. W. 1048. The mandamus court should simply have decided the ultimate question of law as to whether any property right of plaintiff's has been 'taken' or 'damaged' in the constitutional sense, based upon the undisputed facts. It is only where the facts are disputed that the mandamus court should utilize a jury to resolve the disputes preparatory to its decision on the ultimate question of law."