**CREDIT BUREAU OF ST. PAUL, INC.,**
a corporation of the State of Minnesota,
Plaintiff,

v.

**CREDIT BUREAU REPORTS, INC.,** a
corporation of the State of Delaware,
Defendant.

Court of Chancery of Delaware,
New Castle.

March 21, 1972.

E. Norman Veasey, and R. Franklin Balotti, of Richards, Layton & Finger, Wilmington, for plaintiff.

John P. Sinclair, of Potter, Anderson & Corroon, Wilmington and John L. Jeffers,

Jr., of Baker & Botts, of Houston, Tex., for defendant.

MARVEL, Vice Chancellor:

Plaintiff, a stockholder of the defendant corporation, seeks a list of its fellow stockholders, and there appears to be no doubt but that such demandant has fully complied with what may be termed the technical requirements of 8 Del.C. § 220, to-wit the prerequisites to the obtaining of such a list, i. e., a demand under oath and the formal phrasing in such demand of a proper purpose for the use of the list demanded.

At a meeting of its directors held on December 15, 1971, at which a quorum for the transaction of business was present, a resolution was unanimously adopted authorizing plaintiff's president, Bernard J. Duffy, to, inter alia:

> "Make a demand upon Credit Bureau Reports, Inc. for a list of their stockholders pursuant to 8 Delaware Code, Section 220, for the purpose of communicating with said stockholders on matters relating to our mutual interests as stockholders and for the purpose of soliciting their proxies in connection with the annual meeting of stockholders to be held in May, 1972, and more specifically to obtain said list to enable solicitation of proxies for election of members to the Board of Directors."

Defendant concedes that plaintiff has complied with the procedures set forth in the statute, although its answer contends that the purpose pleaded in its complaint is not plaintiff's actual purpose and denies that plaintiff's purpose is " * * * in truth and fact, a proper purpose."

Plaintiff's purpose as pleaded in its complaint is:

> " * * * to communicate with other stockholders of defendant on matters related to plaintiff's interest as a stockholder of defendant, including the communication to the other stockholders and soliciting the proxies of the stockholders

of defendant in connection with the annual meeting of defendant to be held in May 1972."

What plaintiff hopes to achieve by succeeding in obtaining the stockholder list it seeks and by thereafter soliciting votes from its fellow stockholders for defendant's next annual meeting of stockholders is a change in defendant's management policy, which, if accomplished, would result in the restoration of an earlier managerial policy which consisted of dealing more generously than at present with local credit bureaus of which plaintiff is merely one, regardless of whether or not they were stockholders of defendant. In other words, the present policy of defendant's management appears to be to stress its implicit corporate purpose of making money for its stockholders.

Plaintiff's function and that of other numerous local credit bureaus is to furnish credit information to defendant under contract. What plaintiff opposes, according to its chief executive office, Mr. Duffy, is defendant's policy of allegedly underpaying plaintiff and others on its level for the reports furnished by them to defendant.

In short, plaintiff is of the opinion that some of defendant's net profits should be passed down to its suppliers generally and not set aside solely as a fund out of which dividends may be paid to its stockholders. Defendant counters that it has a duty to its stockholders and not to non-stockholding local credit bureaus who are bound by contract to furnish reports to defendant.

Nonetheless, I am satisfied from a consideration of the evidence adduced at trial that plaintiff's primary purpose is in fact to communicate with fellow stockholders of the defendant Credit Bureau Reports, Inc. as a prerequisite to engaging in a proxy contest, and it is irrelevant under the Delaware precedents whether or not the result of such communication, followed by the soliciting of proxies, may result in changes in defendant's management policy, which may or may not secondarily accomplish

ends inimical to defendant's present management.

I say this notwithstanding defendant's contention that the record demonstrates that what is actually involved here is an attempt by plaintiff's chief executive officer, Bernard J. Duffy, in league with other executives of local credit bureaus working through a committee, to unify against defendant's policy for the benefit of a business enterprise known as Associated Credit Bureau, Inc., the organizer of a service business known as Credit Services International which competes with defendant. And it appears that Mr. Duffy, the driving force in this action of plaintiff's, is, in fact, an agent and non-voting director of Credit Services International, which is in competition with plaintiff.

However, as stated by the Delaware Supreme Court in Bruce Company v. State ex rel. Gilbert, 1 Storey 252, 144 A.2d 533, in a case antedating the more workable provisions of present 8 Del.C. § 220.

"That the relators' corporation is a competitor of the Bruce Company does not of itself defeat the stockholders' statutory right of inspection. State ex rel. Watkins v. Cassel, Mo.App., 294 S.W. 2d 647. The possibility that the relators, if successful in their attempt to win control, may abuse that control is mere speculation. If such control is won and abused the minority has its remedy in the courts."

See also General Time Corporation v. Talley Industries, Inc., 43 Del.Ch. 531, 240 A.2d 755, in which the Supreme Court stated:

"Once the status of a stockholder is established under § 220, he is entitled to the list if his primary purpose is reasonably related to that status.

\*    \*    \*    \*    \*    \*

"In short, we are of the opinion that when a stockholder establishes his status as such, and seeks production of a stockholders' list for a purpose germane to that status, such as a proxy solicitation, he is entitled to its production."

Finally, if as defendant contends, the board members who authorized Mr. Duffy to proceed with the corporate demand he then caused to be accomplished, did not understand the import of their act, steps could presumably have been taken to rescind such resolution.

A list of defendant's stockholders as of March 21, 1972, will be ordered to be furnished plaintiff not later than noon Central Time on Friday, March 24, 1972, on condition that plaintiff first pay defendant the reasonable cost of obtaining and furnishing such list.