The CONSERVATIVE CAUCUS RE-SEARCH, ANALYSIS & EDUCATION FOUNDATION, INC., Plaintiff,

v.

CHEVRON CORPORATION, Defendant.

Civ. A. No. 8830.

Court of Chancery of Delaware,
New Castle County.

Submitted: Feb. 26, 1987.
Decided: March 17, 1987.

Gregory A. Inskip, Potter Anderson & Corroon, Wilmington, for plaintiff.

Paul P. Welsh and Palmer L. Whisenant, Morris, Nichols, Arsht & Tunnell, Wilmington, for defendant.

HARTNETT, Vice Chancellor.

Plaintiff Conservative Caucus Research Analysts & Education Foundation, Inc., a non-profit corporation, is the owner of 30 shares of stock of defendant Chevron Corporation. It seeks a stockholder list in order to communicate with other stockholders about the alleged economic risks of Chevron's business activity in Angola, and about a resolution which is proposed to be submitted in connection with the next annual meeting of Chevron.

I find, after trial, that plaintiff is a registered owner of shares of stock of Chevron, has made a proper demand for a stockholder list and that defendant has not borne its burden of showing that the purpose for which plaintiff seeks a stockholder list is improper. Plaintiff therefore is entitled to the list.

## I

It is not disputed that on January 15, 1987 plaintiff was a registered holder of 30 shares of stock of Chevron and that it made a demand under oath for a copy of Chevron's stockholder list. The demand states that a stockholder list is desired for the purpose of communicating with fellow stockholders with respect to the alleged economic risks of Chevron's business activity in Angola, the support of a resolution being proposed by James Deering Danielson, who is not a party to the present suit, which urges that the stockholders request the Board of Directors of Chevron to take certain actions relating to the government of Angola and the bringing to the attention of the stockholders that Chevron may refuse to submit the Danielson Resolution to the stockholders. The Danielson Resolution proposes that the corporation state to the Angolan government that it will terminate operations in Angola unless the government abandons the Communist system of government, initiates unconditional negotiations with certain political organizations which oppose the current government of Angola, and do other similar political acts.

The statute providing for the obtaining of a stockholder list states in part:

"Any stockholder, in person or by attorney or other agent, shall, upon written demand under oath stating the purpose thereof, have the right during the usual hours for business to inspect for any proper purpose the corporation's stock ledger, a list of its stockholders, and its other books and records, and to make copies or extracts therefrom. A proper purpose shall mean a purpose reasonably related to such person's interest as a stockholder...." 8 *Del.C.* § 220(b).

■ A communication with other stockholders about specific matters of corporate concern, especially in connection with a pending stockholders' meeting, has consistently been held to be a proper purpose for a stockholder to obtain a stocklist. *Trans World Airlines, Inc. v. State,* Del.Supr., 183 A.2d 174 (1962); *Credit Bureau of St. Paul v. Credit Bureau Reports, Inc.,* Del. Ch., 290 A.2d 689, *aff'd,* Del.Supr. 290 A.2d 691 (1972); *Mite Corp. v. Heli-Coil Corp.,* Del.Ch., 256 A.2d 855 (1969).

Title 8, *Del.C.* § 220(c) states in part: "... Where the stockholder seeks to inspect the corporation's stock ledger or list of stockholders and he has complied with this section respecting the form and manner of making demand for inspection of such documents, the burden of proof shall be upon the corporation to establish that the inspection he seeks is for an improper purpose...."

It is clear (and not seriously disputed) that plaintiff, in stating that it seeks to communicate with the other stockholders about the economic risks of Chevron doing business in Angola, has complied with the form and manner of making a demand for a stockholder list. The burden at trial therefore was upon Chevron to establish that the inspection would be for an improper purpose.

## II

Chevron urges a number of reasons why the plaintiff's purpose is improper. None of them are meritorious.

■ Chevron first claims that plaintiff's purpose in seeking the stocklist is not reasonably related to plaintiff's interest as a stockholder in that it is merely to harass the corporation. *Skouras v. Admiralty Enterprises, Inc.,* Del.Ch., 386 A.2d 674 (1978). Plaintiff testified at trial, however, that its primary purpose was to call to the stockholders' attention that the corporation is likely to suffer economic loss if it persists in engaging in business operations in Angola due to the likelihood of war or an unstable government. This is a purpose which is proper for discussion and consider-

ation by a corporation. Nor are such concerns necessarily adverse to the best interests of the corporation. Cf., *CM & M Group v. Carol*, Del.Supr., 453 A.2d 788 (1982); *Skoglund v. Ormand Industries, Inc.*, Del.Ch., 372 A.2d 204 (1976).

A proper purpose having been stated, all others are irrelevant. *General Time Corp. v. Talley Industries, Inc.*, Del.Supr., 240 A.2d 755 (1968); *Credit Bureau of St. Paul v. Credit Bureau Reports, Inc.*, supra; *Mite Corp. v. Heli-Coil Corp.*, supra.

Chevron's reliance on *Carpenter v. Texas Air Corp.*, Del.Ch., C.A. No. 7976–NC, Hartnett, V.C., (April 18, 1985), is misplaced. I denied a stockholders list in that case because of the existence of a number of factors including the fact that the demand itself was defective and the burden of persuasion therefore rested on those seeking it. I also found that the plaintiffs were sham parties fronting for a labor organization, had no real personal interest in obtaining a stockholder list, and were not stockholders of the corporation for which the list was sought. The real purpose for the obtaining of the list was found not to be to communicate with the stockholders about the forthcoming annual meeting but only to exert economic pressure in connection with a labor dispute. It was pointed out in that opinion, however, that a labor organization which is the holder of stock in a corporation can, under proper conditions, obtain a stockholder list in order to communicate with fellow stockholders.

■ Chevron next urges that plaintiff does not have an interest as a stockholder in obtaining the stockholder list because its interest is solely political. Chevron relies on *Pillsbury v. Honeywell, Inc.*, Minn. Supr., 291 Minn. 322, 191 N.W.2d 406 (1971). In that case the Supreme Court of Minnesota, relying on the Delaware statute, denied a Vietnam war protestor a stockholder list because it found that he purchased his stock solely for the purpose of seeking a stockholder list and of using it to try to impose his social and political beliefs on the corporation. This motivation was not "deemed to be a proper purpose

germane to his economic interest as a shareholder."

That holding is, of course, not binding on this court and it was criticized by the Delaware Supreme Court in *Credit Bureau Reports, Inc. v. Credit Bureau of St. Paul, Inc.*, supra.

The facts are also different here. Plaintiff has testified that it seeks the stocklist to warn the stockholders about the allegedly dire economic consequences which will fall upon Chevron if it continues to do business in Angola. Some of these possible economic consequences, according to plaintiff, are: sanctions by the U.S. Government; adverse consequences imposed by the Export-Import Bank; an embargo by the U.S. Defense Department on purchases of oil which has its source in Angola; a denial of certain federal tax credits; the risk to personnel and facilities of an unstable government; and, the risk of war in Angola. These are surely matters which might have an adverse affect on the value of the stock of Chevron. I, therefore, find that the holding in *Pillsbury* is not persuasive.

■ Chevron also asserts that the Danielson Resolution is not a proper subject for stockholder action because the power and duty to manage the business affairs of a Delaware corporation is vested exclusively in the board of directors. 8 *Del.C.* § 141(a). *Abercrombie v. Davies*, Del.Ch., 123 A.2d 893 (1956), *rev'd on other grounds*, Del.Supr., 130 A.2d 338, 36 Del.Ch. 371 (1957).

Chevron correctly points out that the Danielson Resolution impliedly concedes its limited effect because it states that "the stockholders request" the board of directors to establish certain policies relating to the corporation doing business in Angola.

Just because the resolution only requests the board to take certain action, however, does not make it improper nor change its purpose: to influence the board to withdraw corporate activities from an area because the continuance of business there

might result in an economic loss to the corporation.

■ Chevron further asserts that its stockholders are entitled to privacy and should not be subject to pressure from individuals or groups whose only interest is to assert opposition or criticism to an immense range of issues, most of which have little or no impact on the primary interests of a corporation, which is to be profitable. Chevron cites *State ex rel. Armour & Co. v. Gulf Sulphur Corp.*, Del.Super., 233 A.2d 457 (1967), *aff'd* Del.Supr., 231 A.2d 470 (1967). That case, however, only related to the confidentiality interests of a corporation.

While I agree that stockholders should be free from harassment, and that organizations which attempt to assert positions which are only marginally related to the economic interests of a corporation must be looked upon with some suspicion, here plaintiff has testified that it will only communicate by mail to the stockholders. In this present day, where all householders are constantly inundated with reems of mailed exhortations and appeals, the receipt of one more letter, no matter how useless, or bizarre, can hardly be harassment.

I therefore find that Chevron has not borne its burden of showing that plaintiff's urging Chevron to cease to do business in Angola because of the possible negative economic consequences of that activity is an improper purpose and that any other purpose is irrelevant.

### III

Plaintiff, in response to the claims of Chevron, correctly points out that Chevron in its preliminary proxy statement to the Federal Securities and Exchange Commission has included a copy of the Danielson Resolution as being a matter which can be presented and voted upon at the annual meeting. Apparently Chevron now has had second thoughts about this inclusion, but the fact remains that, as of now, the Danielson Resolution will be mailed in Chevron's proxy materials. In mailings to stockholders in 1986 the management of Chevron also advanced views about why Chevron should retain its interests in Angola.

If plaintiff is denied a stockholders list it would be precluded from being able to present its views about a matter that the corporation has already expressed itself and about a resolution that presumably will be distributed to all stockholders in connection with the 1987 annual meeting. Simple concepts of fairness mandate that plaintiff be given the opportunity to disseminate its views concerning these issues.

Plaintiff also relies on my holding in *Loretto Literary & Benevolent Institution v. Blue Diamond Coal Co.*, Del.Ch., 444 A.2d 256 (1982). That case, however, is not in point. The issue there was whether a corporation which had purchased stock in a Delaware corporation could be denied the transfer and registration of its shares merely because it purchased the shares in order to attempt to influence corporate policy. The issue before the court in that case was quite different than is present here.

### IV

Chevron somehow also equates the issue of disruptive stockholder meetings with the issues presented here. The question of the disruption of a stockholder meeting is an entirely separate issue, however, which has little bearing on plaintiff's application. Nothing contained herein should be construed as the approval of disruptive acts at stockholder meetings, however.